**Jewel BURRUS, Plaintiff-Appellant,**

v.

**UNITED TELEPHONE COMPANY OF KANSAS, INC., Defendant-Appellee.**

**No. 80–1741.**

United States Court of Appeals, Tenth Circuit.

July 22, 1982.

Richard H. Anton, Kansas City, Mo., for plaintiff-appellant.

J. Richard Smith, Overland Park, Kan. and Arlyn D. Haxton and John A. Vering, III, of Dietrich, Davis, Dicus, Rowlands & Schmitt, Kansas City, Mo., for defendant-appellee.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Jewel Burrus brought this sex discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against United Telephone Company of Kansas, Inc. (UTC). Burrus alleges that UTC engaged in unlawful employment discrimination by failing to promote her because of her sex,[1] and by retaliating against her after she filed charges of discrimination.[2] We affirm the trial court's holding that UTC did not violate Title VII.

---

1. The relevant statute, 42 U.S.C. § 2000e-2(a), provides in pertinent part:

    "(a) It shall be an unlawful employment practice for an employer—
    (1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

2. The relevant statute, 42 U.S.C. § 2000e-3, provides in pertinent part:

    "(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation,

## I.

### Background of Case

The facts relevant to Burrus' Title VII action are as follows. Burrus is an accountant. She worked for the American Telephone & Telegraph Company (AT&T) between 1948 and 1968. From June 1968 until February 1970, she was employed by United Systems Services, Incorporated (USS). Thereafter, Burrus worked for defendant UTC until she was terminated in 1976. Both USS and UTC are wholly owned subsidiaries of United Telecommunications, Incorporated.

While employed by these companies, Burrus held various positions and pursued her education. During her last five years of employment with AT&T, she served as an Accounting supervisor. Neither she nor anyone she supervised at AT&T had an accounting degree. Burrus' job title throughout her employment with defendant UTC was "accountant," although she did not obtain her Bachelor of Science accounting degree until 1972.

UTC never promoted Burrus. UTC did, however, promote some of her male and female contemporaries to supervisory positions. Burrus claims that she was as well qualified as the promoted males; that she had made known her desire for promotion; and that UTC not only refused to promote her, but closed out available positions by appointing males to them.

Because of the alleged discriminatory practices of UTC, Burrus filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC) and the Kansas Commission on Civil Rights. Her retaliation claim is based on an allegation that after she filed her charge, UTC further restricted her growth opportunities and generally conspired to drive her from the firm.

Both the EEOC and the Kansas Commission found no probable cause to believe Burrus' charges were true. Burrus subsequently filed this lawsuit in federal court. After a bench trial, the court held against Burrus on all her claims. Burrus argues on appeal that the district court erred: (1) by holding she was not discriminated against because of her sex; (2) by finding UTC did not unlawfully retaliate against her after she filed discrimination charges; and (3) by finding Burrus' statistical study to be without probative value.

## II.

### Sex Discrimination

In holding that Burrus was not the victim of unlawful sex discrimination, the trial court found:

"The evidence in this case indicates that plaintiff may have been technically as well qualified as some of her male counterparts who were promoted. It also shows that she was certainly not as technically qualified as two of the males about whom she has complained. More importantly, the evidence suggests that plaintiff was indeed ill-qualified for promotion to a supervisory position, in that she lacked the interpersonal skills necessary for such an advancement. Plaintiff remained unpromoted because she was uncommunicative and unable to work effectively with others."

Rec., vol. I, at 27. The court concluded that "[s]ince . . . plaintiff was not qualified for promotion by reason of her general lack of interpersonal skills, it follows . . . that the court must find as a matter of law that plaintiff has not made out a *prima facie* claim of discrimination in this case." *Id.* at 29.

Burrus argues that the district court erred in its findings that Burrus was not qualified for promotion and thus did not make out a prima facie case of promotion discrimination. She also argues that the criteria used for promotion were too subjective.

A Title VII disparate treatment action for promotion discrimination proceeds in three stages. The plaintiff first has the burden of establishing a prima facie case of

proceeding, or hearing under this subchapter."

employment discrimination under the standards set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the prima facie case is established, the defendant must articulate a reason, using admissible evidence, to explain why "the plaintiff was rejected, or someone else preferred, for a legitimate, nondiscriminatory reason." *Texas Department of Community Affairs*, 450 U.S. at 254, 101 S.Ct. at 1094. If such a reason is offered, in order to prevail the plaintiff must demonstrate that the defendant's articulated reason is a mere pretext for unlawful discrimination. *Id.* at 256, 101 S.Ct. at 1095. Throughout these stages, the overall burden of persuasion remains with the plaintiff. *Id.*

In this case, the trial court concluded that Burrus had failed to establish a prima facie case because she was not "qualified for promotion by reason of her general lack of interpersonal skills," Rec., vol. I, at 29, even though she "may have been technically as well qualified as some of her male counterparts who were promoted." *Id.* at 27.

■ The Ninth Circuit has recently considered at what stage subjective qualifications are properly addressed in the *McDonnell Douglas* three-step analysis. In *Lynn v. Regents of the University of California*, 656 F.2d 1337, 1344 (9th Cir. 1981), the court concluded:

"[O]bjective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process. To do otherwise would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved. This would defeat the purpose underlying the McDonnell Douglas process. See [Board of Trustees of Keene St. Col. v.] Sweeny, 439 U.S. at 24 n.1, 99 S.Ct. at 296 n.1."

*Id.* (emphasis added). We agree with this analysis. Although subjective evaluations play a legitimate part in an employer's determination whether an employee has the

ability to supervise others, *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981), it is also apparent that "subjective decision making provides an opportunity for unlawful discrimination." *Id.*; *Thornton v. Coffey*, 618 F.2d 686, 691 (10th Cir. 1980); *Abrams v. Johnson*, 534 F.2d 1226, 1231 (6th Cir. 1976). In fact, the rejection of an otherwise qualified individual on the basis of subjective considerations entitles the plaintiff "to the benefit of an inference of discrimination, which inference requires the defendants to come forward and articulate legitimate reasons for her non-selection." *Bauer*, 647 F.2d at 1045; *see Texas Department of Community Affairs*, 450 U.S. at 253, 101 S.Ct. at 1093.

■ If a plaintiff's failure to establish that she met the employer's subjective criteria could defeat her prima facie case, the court would then not be required to consider evidence of pretext. Thus the use of subjective criteria could go unchallenged. This result is clearly at odds with the mandate of *McDonnell Douglas* that a plaintiff be afforded a full and fair opportunity to demonstrate that the stated reason for rejection was in fact pretext. 411 U.S. at 804, 93 S.Ct. at 1825; *see also Texas Department of Community Affairs*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95. Although the trial court in this case found that Burrus was objectively qualified for the position, it improperly concluded on the basis of subjective criteria that Burrus failed to establish a prima facie case.

The trial court went on to hold, however, that even assuming the existence of a prima facie case based on Burrus' objective qualifications, the subjective evaluation that she lacked the required ability to get along with others was a legitimate business reason amply supported by the evidence and not rebutted by any showing of pretext. We must uphold these findings of fact unless they are clearly erroneous. *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *Williams v. Colorado Springs, Colo. School District # 11*, 641 F.2d 835, 843 (10th Cir. 1981). Trial court findings are not clearly erroneous unless we are definitely

and firmly convinced, after reviewing the record as a whole, that a mistake has been made. *Id.*

■ Where applicants for a position have objective qualifications that are equal, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria. *Texas Department of Community Affairs*, 450 U.S. at 259, 101 S.Ct. at 1096. We have reviewed the entire record in this case and we do not have a definite and firm conviction that the trial court was mistaken in finding no discrimination. There is evidence that two of the promoted males were more qualified than Burrus because of education, experience, or both. The other males were at least as well qualified as Burrus. Several employees of UTC, including Burrus' direct supervisor and a female employee, testified that Burrus did not get along or communicate well with other UTC employees. Adequate evidence supports the trial court's ultimate conclusion that Burrus was not discriminated against on the basis of her sex.

### III.

#### *Retaliation*

Burrus contends the district court erred in finding that UTC did not retaliate against her because she filed charges of sex discrimination. Burrus claims that pay and promotional opportunities were denied her, and that she ultimately was terminated in retaliation for her charges.

■ The general approach to Title VII suits set out in *McDonnell Douglas* and *Texas Department of Community Affairs* is also applicable to retaliation claims. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980); *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); *Mitchell v. Visser*, 529 F.Supp. 1034, 1044 (D.Kan.1981). A plaintiff must first establish a prima facie case of retaliation by showing that: (1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she was disadvantaged by an action of her employer subsequent to or contemporane-

ously with such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action. *Smalley v. City of Eatonville*, 640 F.2d 765, 769 (5th Cir. 1981); *Grant*, 622 F.2d at 46; *Womack*, 619 F.2d at 1296; *Gunther v. County of Washington*, 623 F.2d 1303, 1314 (9th Cir. 1979) *aff'd. on other grounds*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *See Grant*, 622 F.2d at 46; *Womack*, 619 F.2d at 1296 & n.6.

If a prima facie case is established, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Womack*, 619 F.2d at 1296. The defendant need not prove the "absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason." *Id.; see Texas Department of Community Affairs*, 450 U.S. 254–55, 101 S.Ct. 1094; *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff. *Texas Department of Community Affairs*, 450 U.S. at 255–60, 101 S.Ct. at 1094–97.

■ Here, plaintiff was terminated in January 1976, almost three years after she filed her initial charge of gender discrimination. The record supports the conclusion that Burrus' whole department was justifiably terminated, male and female, because it was duplicating work done elsewhere. Given the length of time between the filing of charges and the termination, we agree with the trial court that Burrus failed to establish a prima facie case of retaliation based on her termination.

The record also amply supports the trial court conclusion that even if Burrus made

out a prima facie case of retaliation based on unfavorable job evaluations and lack of pay increases prior to termination, UTC offered legitimate reasons for Burrus' restricted opportunities which she did not demonstrate were a mere pretext for discrimination. *See e.g., Gunther,* 623 F.2d at 1314; *Miller v. Williams,* 590 F.2d 317, 320 (9th Cir. 1979). Without detailing all the evidence, we note testimony regarding Burrus' continuing attitudinal problems and her inability to work with fellow employees. Thus, we must uphold the trial court's conclusion that UTC did not unlawfully retaliate against Burrus.

## IV.

### Statistical Study

■ Burrus also argues that the district court erred in holding that Burrus' statistical evidence was without probative value. However, adequate evidence in the record supports the trial court's conclusion that the data base of the study was defective because of its small size and other factual inaccuracies.

The judgment of the district court is affirmed.