968 F.2d 1224
 59 Fair Empl.Prac.Cas. (BNA) 768
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Clara M. SIMMONS, Plaintiff-Appellant,
v.
SECURITY BENEFIT GROUP, INC., Roger Viola, Barbara Rankin,
and Glenda Overstreet, Defendants-Appellees.
 No. 91-3080.
 United States Court of Appeals, Tenth Circuit.
 July 7, 1992.
 
 Before BALDOCK and SETH, Circuit Judges, and BRIMMER, District Judge*.
 ORDER AND JUDGMENT**
 SETH, Circuit Judge.
 
 
 1
 Appellant Clara Simmons brought this suit against her employer, Security Benefit Group ("SBG"), and her supervisors, Barbara Rankin, Roger Viola, and Glenda Overstreet, alleging violations of 42 U.S.C. § 2000e and 42 U.S.C. § 1981. Appellant also asserted a claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and pendent state claims. The district court granted defendants' motion for summary judgment on all federal causes of action and dismissed the pendent state claims.
 
 
 2
 During oral argument to this court Appellant's attorney expressly withdrew from the appeal all issues except the retaliation claims under Title VII. Appellant asserts that the retaliation is attributable to this suit and claims she filed with the Kansas Commission on Civil Rights ("KCCC"). In response to the claims the KCCC found no probable cause.
 
 
 3
 Appellant, a black woman with a high school education, began work at SBG as a clerk in the mail room in 1967. Over the twenty-year period that Appellant was employed by SBG she moved up through several positions including mail service clerk, Xerox operator, lobby receptionist, "SMC" transfer clerk, withdrawal/redemption clerk, secretarial assistant--mutual funds, and technical assistant. At the time Appellant was fired she held the position of Blue Sky compliance coordinator.
 
 
 4
 The events giving rise to this lawsuit extend back as far as 1974 but became aggravated in 1984 when Appellant was transferred to the SBG legal department in an attempt to resolve some of Appellant's complaints of disparate treatment by prior supervisors. It is necessary to describe the events in some detail. Soon after Clara Simmons' arrival in the legal department, Appellee Roger Viola was appointed Chief Counsel for SBG and, thus, became Appellant's supervisor. Problems between Viola and Simmons arose immediately. A conversation took place in which Viola stated (allegedly in response to a statement by Simmons that she expected Viola to be as prejudiced toward her as her other supervisors had been) that he had a good friend who was a black woman who took care of his child and that he considered the woman to be a part of his family. This incident was included in a complaint by Appellant to the KCCR.
 
 
 5
 Viola's only written evaluation of Simmons described her as "competent" and she was granted a raise. Simmons disagreed with her evaluation and filed a written response in which she stated she should have been rated "commendable" instead of "competent."
 
 
 6
 In February of 1985, Appellee Barbara Rankin joined the SBG legal department and became Appellant's supervisor. In April of 1985, a part-time employee was hired to help reduce the workload in the legal department. Simmons requested that she be made supervisor over the new employee. Rankin refused because there were only two other employees under Rankin's supervision and adding an additional supervisory level in such a small group seemed pointless. This incident also was included in one of Simmons' later KCCR complaints.
 
 
 7
 Appellant's mid-year evaluation was performed by Rankin. Again, Appellant was evaluated as "competent" but she was notified of possible problems regarding efficiency. She was also told that she was visiting too much on the telephone and with coworkers.
 
 
 8
 In the fall of 1985, Appellee, Glenda Overstreet, was hired to fill a vacancy in the SBG legal department. Overstreet, a black female who met all of the published job qualifications, filled a job that Appellant had applied for and been denied. This incident also was the subject of a later KCCR complaint by Simmons.
 
 
 9
 Appellant was evaluated in February of 1986 by Rankin and again was rated as "competent." Simmons refused to sign the evaluation and filed a detailed written response to the evaluation with SBG's equal employment opportunity officer in which she stated that she was being treated unfairly by her supervisor and that she was being subjected to a double standard of treatment.
 
 
 10
 On May 28, 1986, Viola wrote a memorandum to the SBG Human Resources Department requesting that Simmons be transferred out of the legal department. Viola's request was denied.
 
 
 11
 In June of 1986, Rankin recommended to Viola that Overstreet be made supervisor over the two state compliance coordinator positions, including Appellant's position. Rankin's recommendation was made in part because Rankin felt that she could no longer effectively supervise Appellant. Appellant objected to Overstreet's appointment as her supervisor on the grounds that the change was in reality a new position and that the position should have been posted according to company policy. SBG characterized the change as a "job enhancement" and refused to post the position. Simmons filed a grievance which the company refused to process for the stated reason that Appellant's general claims of disparate treatment were already the subject of previous KCCR complaints. SBG's position was that the company grievance procedure should be used to resolve disputes before any outside legal or administrative remedies were resorted to.
 
 
 12
 Appellant's relationship with her supervisor, Overstreet, was no better than her relationship with previous supervisors. Appellant insisted on communicating through formal memoranda despite Overstreet's repeated statements that such formality was not necessary. As part of her supervisory duties, Overstreet attempted to counsel Appellant about her negative attitude and unwillingness to work as part of the compliance team.
 
 
 13
 By May of 1987, the situation between Appellant and her supervisors in the legal department had begun to deteriorate rapidly. Overstreet had a meeting with Appellant where she informed Appellant of the seriousness of the situation regarding Appellant's negative attitude. Overstreet also discussed with Appellant her continued "threats" to have a KCCR representative present when discussing personnel matters, her continuing to write formal memoranda to her supervisor instead of attempting to communicate orally, Simmons' belief that all decisions made by SBG legal department personnel were intended to discriminate against her, her sighing and rolling her eyes when given assignments by Overstreet and her attitude toward supervision generally.
 
 
 14
 According to Overstreet's deposition, Appellant became increasingly difficult to supervise. Overstreet stated that it "became a circus" to ask Appellant for any assistance or information. Simmons contends that she cooperated fully with Overstreet and diligently performed the tasks assigned to her.
 
 
 15
 In June of 1987, Simmons' attorney wrote formal demand letters to SBG, as well as Viola, Rankin, and Overstreet individually, asserting that Appellant was being harassed and subjected to disparate and retaliatory treatment. Specifically, the letters stated that Simmons was subjected to unauthorized evaluations and selective enforcement of the rules, and that she was denied use of the company grievance procedure.
 
 
 16
 On June 23, 1987, Viola counseled Simmons about problems involving the possible unauthorized use of sick leave, lack of willingness to communicate verbally with her supervisor, a negative attitude toward her supervisor, and repeated demands to speak with KCCR representatives or her attorney when requested by her supervisor to perform work-related functions.
 
 
 17
 On August 18, 1987, Simmons filed this lawsuit while employed. The following week Appellant missed a day of work due to illness. After she was asked to bring a note from her doctor describing the illness, Appellant submitted the note with the words "Submitted under protest" written on it. When Overstreet asked Appellant about the note, Appellant repeatedly told Overstreet to speak with Appellant's attorney.
 
 
 18
 On September 2, 1987, Viola wrote a memorandum to the Vice-President for Human Resources requesting that Appellant be transferred or terminated immediately. In his memorandum, Viola described the unrest in the department caused by Appellant and stated that Overstreet had now refused to work with Appellant any longer. Viola also stated that if something were not done, Overstreet might leave.
 
 
 19
 Simmons, confronted with the possibility of being transferred, told the Human Resources Department that she did not want to be transferred from her job in the legal department. Appellant was terminated on September 18, 1987.
 
 
 20
 On appeal Appellant urges only the district court's grant of summary judgment on the retaliation claim as error. The other claims or causes were dropped, as mentioned. She contends the district court erred in holding that a reasonable jury could not find that SBG retaliated against her for filing civil rights claims. "In reviewing a grant of summary judgment, we utilize the same standard that the district court employs." Merrick v. Northern Natural Gas Co., 911 F.2d 426, 429 (10th Cir.). Summary judgment is proper if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.).
 
 
 21
 This retaliation claim comes within the general procedure for Title VII suits set out in McDonell Douglas Corp. v. Green, 411 U.S. 792, and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248. See Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir.). Thus, to establish a prima facie case of retaliation, we held in Burrus that a plaintiff must show:
 
 
 22
 "(1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding;
 
 
 23
 "(2) she was disadvantaged by an action of her employer subsequent to or contemporaneously with such opposition or participation; and
 
 
 24
 "(3) there is a causal connection between the protected activity and the adverse employment action."
 
 
 25
 683 F.2d at 343. Once a prima facie case has been established the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant produces evidence of a legitimate, nondiscriminatory reason for the employment action, the burden shifts back to the plaintiff to show that the articulated reason is a pretext for discrimination.
 
 
 26
 One of Appellant's claims of retaliation stems from the fact that she was fired only a few weeks after filing this action. A causal connection between protected activity and adverse employment action may be shown by circumstances that justify an inference of retaliatory motive, such as a close temporal relationship between the protected conduct and the adverse action. Burrus, 683 F.2d at 343. Appellant has met her burden of showing a prima facie case of retaliation on this point.
 
 
 27
 The facts are uncontroverted that serious tensions within the SBG legal department were escalating during Appellant's tenure. Appellant had numerous disagreements with her supervisors and discord within the department was making it difficult for the employees to function efficiently.
 
 
 28
 The issue becomes whether Appellant has presented enough evidence to convince a reasonable trier of fact that Appellees' stated reasons for termination were a pretext for discrimination.
 
 
 29
 It is undisputed on the record before us that Appellant experienced problems with her supervisors for many years prior to her discharge. Evaluations by Appellant's superiors consistently noted problems with Appellant's attitude and particularly her attitude toward supervision. Appellant also fails to controvert Appellees' evidence that tensions between Appellant and other members of the SBG legal department had risen to a point where it was interfering with the day-to-day operations of the department. As Appellee Overstreet put it, supervising Appellant became a "circus."
 
 
 30
 As mentioned above, the only significant evidence Appellant relies on to support her claim of retaliation is the close temporal relationship between Appellant's filing of this lawsuit and her termination. After examining the extensive record of the events over the years we find that the date of Appellant's discharge and its close proximity to her filing of this lawsuit are completely fortuitous. Appellant has not come forth with sufficient evidence to show that Appellees' stated reasons for her termination were a pretext for discrimination. Thus, we must hold that Appellant has not presented sufficient evidence to create a genuine issue of material fact as to whether SBG's stated reasons for termination were pretextual.
 
 
 31
 Appellant also points to other incidents during her employment with SBG that she claims are retaliatory. First, Appellant claims that a memorandum written by Appellee Viola on May 28, 1986 creates a fact issue as to whether Appellant was retaliated against. In the May 28 memorandum, Viola requests Appellant's immediate transfer from the SBG legal department. Appellant argues that because the memorandum mentions that she had already filed four discrimination claims with the KCCR it is evidence of discriminatory intent. We disagree. The reference to the KCCR complaints was an attempt to put the request for Simmons' transfer in context. The portion of the letter referring to the KCCR complaints gives some of the background for Appellant's dissatisfaction. The reasons listed for the requested transfer do not include the civil rights complaints; rather, the letter cites problems with Appellant's attitude in general, the disruptive nature of her conduct in a small department, and her unwillingness to be supervised. The letter goes on to request that Appellant be transferred so that "[s]he will then have a chance anew to establish a positive and productive relationship with a new supervisor." (Appellant's App. at 327.) When the May 28 letter is read in its entirety, it is clear that it does not raise an inference of retaliation.
 
 
 32
 We also note that with regard to Viola's May 28 letter no action was taken to transfer Appellant out of the legal department. One of the elements of a prima facie case of retaliation is that the employee be disadvantaged by some act of the employer. Appellant has pointed to no act related to the letter to show that she was disadvantaged in any way.
 
 
 33
 We have also examined the record as to other incidents or events which Appellant urges as evidence of retaliation or discrimination. These include the initial employment of Glenda Overstreet and then later a change in Glenda Overstreet's duties to include the supervision of Appellant. Again, it is apparent that these events did not constitute sufficient evidence to create an issue of material fact.
 
 
 34
 Appellant also asserts that SBG denied her access to the company grievance procedure in retaliation for her filing a civil rights claim. When Appellee, Overstreet, was appointed as Appellant's supervisor, Appellant filed a company grievance regarding the change. SBG refused to process the grievance on the grounds that Appellant's general allegations of disparate and discriminatory treatment were the subjects of previously filed KCCR complaints and that the purpose of the SBG grievance procedure was to address complaints before any outside legal or administrative actions were taken. There is no evidence that other employees were treated differently with respect to the grievance procedure or that the stated policy was in retaliation for Appellant's civil rights complaints. Thus, Appellant has produced no evidence to convince a reasonable trier of fact that SBG's stated reasons for denying her access to the company grievance procedure were pretextual.
 
 
 35
 The judgment of the District Court for the District of Kansas is AFFIRMED.
 
 
 
 *
 Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3