**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 23 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

McKINLEY CRAFT,

Plaintiff-Appellant,

v.

YELLOW FREIGHT SYSTEM, INC.,
a Missouri corporation,

Defendant-Appellee.

No. 97-1029
(D.C. No. 94-D-1711)
(D. Colo.)

**ORDER AND JUDGMENT**\*

Before **KELLY**, **BARRETT**, and **BRISCOE**, Circuit Judges.

McKinley Craft appeals the district court's entry of summary judgment on his Title VII and ADA retaliation claims and the district court's denial of his motion for judgment notwithstanding the verdict on his ADA discrimination claim, as well as the instructions given at the trial. We affirm.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

Craft was employed as an interstate truck driver by Yellow Freight System, Inc. He was involved in a truck accident on November 5, 1990, and his employment was thereafter terminated because he had been involved in three preventable accidents within a year. Craft filed a grievance disputing his termination and an arbitration committee reduced his discharge to a suspension ending June 14, 1991. Craft also filed a charge of race discrimination with the Equal Employment Opportunity Commission (EEOC) on February 1, 1991, but withdrew the charge on December 5, 1991.

Craft suffered a concussion from the November 5 accident and a loss of memory. He was first treated by Dr. Baumgardner, who later referred him to Dr. Voelkel. Craft received workers' compensation benefits as a result of his injuries. Dr. Voelkel released Craft to return to work on March 15, 1991, but, because he was still experiencing dizziness and headaches, Craft placed himself on sick leave and did not return to work.

Craft's employment as an interstate truck driver required that he satisfy certain physical requirements established by the United States Department of Transportation and maintain a certificate. Craft's certificate expired in July 1991. On approximately June 18, 1991, Dr. Mitchell examined Craft and found he did not satisfy the requirements for certification. Dr. Baumgardner examined Craft

on June 28, 1991, and came to the same conclusion. Craft testified that Dr. Baumgardner gave him a return-to-work slip and approved light-duty work. According to Craft, he asked his supervisor, Charles Cowin, to assign him to light duty, but Cowin told him Yellow Freight did not have light-duty work. Yellow Freight instituted a light-duty program in 1992. Craft filed a second EEOC charge on July 29, 1991, alleging Yellow Freight retaliated against him for filing his first EEOC charge by refusing to let him return to work.

Dr. Bennett examined Craft on November 8, 1991, and issued him a new certificate. Craft presented the certificate to Yellow Freight and requested reinstatement. Pursuant to the collective bargaining agreement between Yellow Freight and the Teamsters Union, however, Yellow Freight had the right to select the physician who performed examinations for certificates. Consequently, Yellow Freight refused to accept the certificate from Dr. Bennett and ordered Craft to see Dr. Mitchell. In December 1991, Dr. Mitchell again determined Craft was not qualified.

Craft then went to Dr. Davis, who approved his return to work. Craft took Dr. Davis' release to Yellow Freight but, on January 23, 1992, Dr. Mitchell permanently disqualified Craft from certification. Dr. Mitchell reported Craft had a "history of loss of consciousness" or a "seizure disorder." Appellant's App. III at 1114. The bargaining agreement provided that the parties select a third

physician to resolve the dispute. The Union recommended Dr. Becky, and Yellow Freight agreed. In February 1992, Dr. Becky determined Craft was not qualified to drive but that he could perform other work. Craft alleges Dr. Becky did not perform a proper examination. Dr. Becky based his decision on the other physicians' records.

Dr. Happer examined Craft on March 6, 1992, and issued a certificate. Craft testified that he presented the certificate to Yellow Freight, but Cowin testified he did not see the certificate until Craft's grievance hearing in July 1992. In April 1992, Dr. Voelkel also provided Craft with a certificate. Yellow Freight urged Dr. Voelkel to reconsider certification. Dr. Voelkel examined Craft's medical records and, on September 15, 1992, opined that Craft's certification should be revoked.

Craft again sought reinstatement on June 10, 1992, but Yellow Freight refused and ordered him to go back to Dr. Becky. Craft filed a second grievance. Craft did not request light duty in his grievance or at any subsequent grievance hearing. However, Dan Hazard, an injury counselor for Yellow Freight, testified Craft did at some point request light duty.

The ADA became effective on July 26, 1992, and Yellow Freight by then was aware Craft believed he no longer had medical problems. On August 30, 1992, Craft filed a third EEOC charge, alleging Yellow Freight refused to

reinstate him to his position as a driver on August 3, 1992. However, Cowin testified Craft did not request reinstatement at any time between June 1992 and December 1992. Craft claimed he had been discriminated against because of his race and in retaliation for having filed previous EEOC charges, and also because of his disability.

In November 1992, a joint panel arbitration committee determined Craft should submit to another physical examination by Dr. Becky. Dr. Soler, who was Dr. Becky's assistant, examined Craft and issued a certificate. Dr. Carroll also certified Craft, and Dr. Happer confirmed certification and noted Craft had been able to return to work in March 1992. On November 30, 1992, Dr. Becky agreed Craft could receive his certificate. Craft was reinstated on December 4, 1992.

Craft brought this action alleging race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, ADA discrimination, and the tort of outrageous conduct. The district court granted the parties' joint motion to dismiss the outrageous conduct claim and granted summary judgment to Yellow Freight on the ADA retaliation claim and the race discrimination claim. A jury returned a verdict for Yellow Freight on the ADA discrimination claim.

## II.

This court reviews the grant or denial of summary judgment de novo,

-5-

applying the same legal standard used by the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Kaul v. Stephen, 83 F.3d 1208, 1212 (10th Cir. 1996).

### ADA Retaliation Claim

Yellow Freight argues Craft's ADA retaliation claim is not properly before this court because Craft did not raise it before the district court. Craft's complaint stated claims of race discrimination and retaliation under Title VII and § 1981, and alleged Yellow Freight refused to reasonably accommodate Craft's disability and denied him equal access to employment and benefits, in violation of the ADA. Craft did not allege Yellow Freight retaliated against him for pursuing his rights under the ADA. See 42 U.S.C. § 12203. However, the pretrial order broadly describes Craft's claims by stating Craft alleged "discrimination and retaliation on the basis of his race in violation of Title VII and 42 U.S.C. § 1981 and/or on the basis of a handicap or perceived handicap in violation of the [ADA]." Appellant's App. I at 216. A pretrial order controls the subsequent course of an action. Fed. R. Civ. P. 16(e). Craft also raised the issue of an ADA retaliation claim on the morning of trial. The district court denied his motion to reconsider dismissal of all retaliation claims. Craft's ADA retaliation claim was therefore raised and resolved in the district court and is properly before us.

Yellow Freight next contends even if Craft's ADA retaliation claim is

properly before this court, Craft failed to file an EEOC charge alleging ADA

retaliation and has therefore failed to satisfy jurisdictional prerequisites.[1] Federal

courts lack jurisdiction to entertain Title VII claims not first filed with the EEOC.

Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir.), cert. denied, 118

S. Ct. 342 (1997) (construing 42 U.S.C. § 2000e-5). This jurisdictional

requirement of administrative exhaustion applies equally to ADA claims. 42

U.S.C. § 12117(a).[2] A plaintiff may seek judicial relief for discrimination not

described in his EEOC charge, however, if the discrimination is reasonably

related to the allegations in the charge. Seymore, 111 F.3d at 799. Where an

alleged retaliatory action occurs after the filing of an EEOC charge, the

retaliatory action is reasonably related to the charge, and the plaintiff is not

---

[1] The discrimination statement in Craft's August 30, 1992, EEOC charge, the only charge filed after the effective date of the ADA, reads:
> I believe that I have been discriminated against because of my race, Black, and in retaliation for having filed a previous EEOC charge, all in violation of Title VII . . ., and because of my disability, in violation of the Americans with Disabilities Act of 1991, in as much as:
>
>     . . . .
>          C. I filed two (2) previous charges of discrimination against the
> company.

Appellant's App. I at 104.

[2] Yellow Freight admits it did not raise the jurisdiction issue before the district court. Subject matter jurisdiction may be raised at any stage of the proceedings, however, and this court therefore addresses the issue. See Laughlin v. Kmart Corp., 50 F.3d 871, 872-73 (10th Cir. 1995). Yellow Freight also submits its failure to raise the issue was due to Craft's failure to state the claim in his complaint. As discussed, Craft did not clearly articulate his ADA retaliation claim until the day of trial.

required to file a subsequent EEOC charge alleging the retaliation. Id. Thus, any acts by Yellow Freight in retaliation for Craft's August 30, 1992, charge of discrimination under the ADA would be reasonably related to that charge and this court would have jurisdiction of any such claims. However, where a retaliatory act occurs prior to the filing of a charge and the employee fails to allege the retaliatory act or a retaliation claim in the charge, the retaliatory act ordinarily will not reasonably relate to the charge. Id. The defendant is entitled to presume the plaintiff is asserting a claim only for the underlying discrimination. Id. at 800.

Craft alleges in his reply brief that he requested reinstatement after the ADA became effective, but Yellow Freight refused. Under Seymore, however, Craft did not exhaust his administrative remedies with respect to any incidents of retaliation under the ADA occurring prior to his August 30, 1992, charge. Further, Craft's request for reinstatement did not constitute protected activity under the ADA retaliation statute. 42 U.S.C. § 12203(a) forbids discrimination against individuals who oppose an act or practice made unlawful by the ADA, or who make a charge, testify, assist, or participate in an investigation, proceeding, or hearing under the ADA. Craft has cited no authority for the proposition that a request for reinstatement can constitute protected activity under § 12203(a). Indeed, if requesting reinstatement constituted protected activity under the

retaliation statute, there would be no distinction between the alleged retaliation and the underlying discrimination.

We next address whether the court erred in granting summary judgment to Yellow Freight on Craft's ADA retaliation claim. To establish a prima facie case of retaliation under the ADA, a plaintiff must show (1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action. Morgan v. Hilti, Inc., 108 F.3d 1319, 1324 (10th Cir. 1997). Craft satisfies the first prong of this test. He engaged in protected employee action by filing his August 30, 1992, EEOC charge asserting discrimination under the ADA. However, he fails to satisfy the second and third prongs. Craft alleges a pattern of retaliation began in June 1991 when he asked to return to work and that the pattern continued until he was reinstated in December 1992. Yellow Freight's adverse action therefore began before Craft's protected action and thus fails to satisfy the second prong. To the extent Craft attempts to portray Yellow Freight's adverse action as a pattern that continued after August 30, 1992, he still fails to satisfy the third prong. He has not shown how Yellow Freight's adverse action, which began before he filed his EEOC charge, can be causally connected to the charge.

**Race Retaliation Claim**

To establish a prima facie case of retaliation under Title VII, an employee must show (1) he engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) he was disadvantaged by an action of his employer subsequent to or contemporaneously with such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action. Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982). If the employee makes out a prima facie case of retaliation, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. Id. at 343. If the employer produces evidence of a legitimate reason, the burden of persuasion shifts back to the employee to demonstrate the employer's articulated reason was a mere pretext for discrimination. Id. The elements of a § 1981 cause of action are identical. Thomas v. Denny's, Inc., 111 F.3d 1506, 1513 (10th Cir.), cert. denied, 118 S. Ct. 626 (1997).

A review of the chronology of alleged protected and adverse actions is helpful at this point. Craft filed his first EEOC charge on February 1, 1991. He alleges Yellow Freight took adverse action against him in June 1991 when he asked to return to light-duty work and Yellow Freight refused. Yellow Freight counters it did not have a light-duty program at that time and, therefore, its

refusal was not an adverse action. Craft filed a second EEOC charge on July 29, 1991. Craft obtained a certificate from Dr. Bennett in November 1991 and sought to return to work in December 1991. Yellow Freight refused to accept the certificate and required that Craft submit to an examination by Dr. Mitchell, who determined Craft was not qualified for certification. In January 1992, Dr. Davis approved Craft's return to work, but Dr. Mitchell subsequently permanently disqualified Craft from eligibility for certification. Yellow Freight and the Union selected Dr. Becky to resolve the dispute and, in February 1992, Dr. Becky determined Craft was not qualified to drive but he could perform other work. In March 1992, Craft obtained a certificate from Dr. Happer and in April 1992 he obtained a certificate from Dr. Voelkel. Craft requested reinstatement in June 1992, but Yellow Freight refused. Craft again sought reinstatement on August 3, 1992, and was again refused.[3] Craft filed a third EEOC charge on August 30, 1992, alleging Yellow Freight discriminated against him because of his race and his disability, and in retaliation for previous EEOC charges.

We need not decide whether Yellow Freight's refusal to allow Craft to return to work in June 1991 constituted an adverse action because Craft did not

---

[3] Craft asserts Yellow Freight refused to place him in a light-duty position on August 3, 1992, despite the fact he requested light duty and light-duty positions were available. Craft's August 30, 1992, charge, however, only alleged that Yellow Freight refused to reinstate him to his driver position.

make this allegation before the district court. Neither the pretrial order nor Craft's response to Yellow Freight's motion for summary judgment referenced Yellow Freight's refusal to reinstate Craft in June 1991. Consequently, the magistrate court and the district court did not address the allegation. This court will not entertain issues on appeal that were not argued to the district court except in cases of "the most manifest error." Jenkins v. Wood, 81 F.3d 988, 996 (10th Cir. 1996).

Craft asserts the bargaining agreement did not preclude Yellow Freight from accepting Dr. Bennett's certificate in December 1991, but admits the agreement granted Yellow Freight the right to select its own physician. We question whether Yellow Freight's decision to require Craft to obtain certification from Dr. Mitchell as a condition of reinstatement even constituted an adverse action for purposes of Title VII and § 1981. See Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir.), cert. denied, 118 S. Ct. 336 (1997) ("Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."). In any event, the only evidence Craft presents of a causal connection between the filing of his EEOC charges and Yellow Freight's refusal to reinstate him is that Yellow Freight's refusals occurred relatively soon after Craft filed his charges. Craft filed charges in February 1991, July 1991, and on

August 30, 1992. Yellow Freight refused reinstatement in December 1991, June 1992, and on August 3, 1992.[4] A causal connection can be inferred where close temporal proximity exists between an employee's charges against his employer and subsequent adverse action. Candelaria v. EG & G Measurements, Inc., 33 F.3d 1259, 1262-63 (10th Cir. 1994).

The district court found Yellow Freight took no adverse action against Craft until at least April 1992 when it refused to accept Dr. Voelkel's certification. The court concluded the lapse of time between the EEOC charges and Yellow Freight's adverse action precluded an inference that the action was the result of the EEOC charges. Craft points out, however, that the district court incorrectly recited the dates of his protected activity. It should be noted that while the court incorrectly cited the dates on page seven of its December 16, 1996, order, it correctly cited the dates on page four of the order. Even if the court erroneously failed to find evidence of a causal connection between Craft's protected activity and Yellow Freight's adverse actions, however, Yellow Freight articulated a legitimate, nondiscriminatory reason for refusing to reinstate Craft,

---

[4] Craft argues the district court mistakenly found his second EEOC charge was solely a charge of discrimination rather than a charge of both discrimination and retaliation. Craft submits this error led the court to erroneously conclude his retaliation claim was at issue only after his third EEOC charge. Craft is correct that at page four of its December 16, 1996, order, the district court stated Craft's second EEOC charge alleged discrimination. However, the court correctly noted at page seven that Craft based his retaliation claim on his first two EEOC charges.

i.e., Dr. Becky, the physician jointly selected with the Union, found Craft did not meet certification requirements.

Craft implies Yellow Freight's articulated reason was pretextual, arguing because Dr. Voelkel was a Yellow Freight company doctor and Craft's treating physician, Yellow Freight should have accepted his certification. As noted, Dr. Voelkel was Craft's treating physician only for workers' compensation purposes. Yellow Freight employed Dr. Mitchell for certification purposes.

Craft argues other evidence indicates Yellow Freight's articulated reason for refusing to reinstate him was pretextual. Jolene Broszat, an injury counselor for Yellow Freight, testified she knew of no other case in which Yellow Freight had refused to allow an injured driver to return to work because of failure to obtain certification. Dan Hazard, another injury counselor, urged Dr. Voelkel to reconsider her position after she certified Craft. Hazard testified that was the only time during his employment with Yellow Freight that he had asked a physician to reexamine a medical opinion. Craft also submits that despite its claim that only Dr. Mitchell or Dr. Becky could certify him, Yellow Freight relied on other physicians' assessments on other occasions.

It is undisputed that Craft was subject to physical requirements as an interstate driver and that Yellow Freight could not let him return to work without certification. Therefore, by arguing the fact that Broszat knew of no other case

where Yellow Freight refused to return an injured driver to work for failure to meet certification requirements is evidence of pretext, Craft necessarily implies Yellow Freight engineered Dr. Mitchell's and Dr. Becky's refusal to certify him. There is simply no evidence that Dr. Mitchell failed to perform a proper examination or that he falsified the results of his examination, or that Dr. Becky improperly relied on reports of other physicians in making his determination.

Craft also contends that while Yellow Freight claimed it could only accept a certificate from Dr. Mitchell or Dr. Becky, it relied on other physicians' assessments when it suited its purposes to do so. A review of the evidence reveals Yellow Freight consistently relied only on the opinions of Dr. Mitchell or Dr. Becky for certification purposes. Dr. Voelkel released Craft to return to work, but did not perform a certification examination or issue a certificate at that time. There is no evidence that Yellow Freight relied on Dr. Baumgardner's June 28, 1991, finding of ineligibility because Dr. Mitchell had already examined Craft on June 18, 1991, and found he did not meet certification requirements. Yellow Freight had already refused to reinstate Craft despite Dr. Voelkel's certification in April 1992, and Hazard had written to Dr. Voelkel in June 1992 that Yellow Freight believed Dr. Mitchell should be responsible for certifying Craft, so Yellow Freight did not rely on Dr. Voelkel's revocation of certification in September 1992. Nor is there evidence that Yellow Freight relied on the opinions

of Drs. Happer, Soler, and Carroll when it reinstated Craft in December 1992. Craft was reinstated only after Dr. Becky agreed Craft could be certified. Craft offered evidence that Yellow Freight asked Dr. Voelkel to reconsider her April 1992 certification. Hazard admitted in his deposition this was the only time he had made such a request. Broszat sent Dr. Voelkel a copy of the certification regulations and the results of Craft's previous medical examinations and commented the examinations supported the opinion that Craft was not qualified. Dr. Voelkel examined the records and decided Craft's certification should be revoked. According to Craft, the fact that Yellow Freight asked Dr. Voelkel to reconsider is evidence that Yellow Freight's articulated reason for refusing to reinstate him was merely pretextual and Yellow Freight actually acted in retaliation for the EEOC charges. However, Hazard's letter to Dr. Voelkel supports Yellow Freight's contention that it was concerned about Craft's ability to drive. Hazard wrote that Yellow Freight was "very concerned for the liability [Yellow Freight faced] if Mr. Craft were to be reinstated as a driver . . . and then had an accident based on his past history." Appellant's App. III at 1122. Craft has failed to present evidence that Yellow Freight refused to reinstate him for any reason other than his inability to satisfy the certification requirements for interstate drivers.

**Jury Instructions on ADA Discrimination Claim**

This court reviews jury instructions de novo. Coleman v. B-G Maintenance Management of Colo., Inc., 108 F.3d 1199, 1202 (10th Cir. 1997). We examine instructions in their entirety, deciding not whether the instructions were completely faultless, but whether the jury was misled in any way. Reversal is warranted when a deficient jury instruction was prejudicial, i.e., if the jury might have based its verdict on the erroneous instruction. Id.

42 U.S.C. § 12112(a) provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability." Section 12112(b) defines discrimination as:

> (1) limiting, segregating, or classifying a job applicant or employee . . . because of the disability of such applicant or employee;
> (2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with . . . [a] labor union . . .);
> (3) utilizing [discriminatory] standards, criteria, or methods of administration . . .;
> (4) excluding or otherwise denying equal jobs or benefits to a qualified individual . . .;
> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual . . .;
> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual . . .;
> (6) using qualification standards, employment tests or other selection criteria that screen out . . . an individual with a disability . . .;

-17-

(7) failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability . . . such test results accurately reflect the skills . . . of such applicant or employee.

Craft proposed a jury instruction which defined discrimination to include (b)(1), (b)(5)(A), (b)(5)(B), and (b)(2). Section 12112(b)(2) prohibits an employer from doing through a contractual or other relationship that which it is prohibited from doing directly. 29 C.F.R. app. § 1630.6. Regulations under the Rehabilitation Act of 1973, made applicable to the ADA via 42 U.S.C. § 12117(b), provide that an employer's obligation to comply with the Act "is not affected by any inconsistent term of any collective bargaining agreement to which it is a party." 45 C.F.R. § 84.11(c). The trial court refused to give Craft's tendered instruction and instead used an instruction which incorporated only (b)(1), (b)(5)(A), and (b)(5)(B).

Craft submits the district court erred in refusing to instruct the jury on § 12112(b)(2). Craft argues Yellow Freight referred to the bargaining agreement throughout the trial in an attempt to convince the jury that because it was operating pursuant to the agreement, the ADA did not apply to its actions. According to Craft, Yellow Freight's argument and testimony at trial mandated that the jury be instructed the ADA prevailed over the bargaining agreement and that an employer could not escape its ADA obligations by relying on a collective

bargaining agreement. Yellow Freight contends it introduced evidence regarding the agreement to prove it acted for legitimate, nondiscriminatory reasons.

Craft argues the district court should have instructed the jury that where a conflict exists between the ADA and a collective bargaining agreement, the ADA controls. However, Craft failed to show any conflict between the ADA and any collective bargaining agreement provision.[5] Nor did Craft present evidence that Yellow Freight's participation in the bargaining agreement had the effect of subjecting him to discrimination. Craft's proposed instruction was therefore inapplicable to the facts of this case. The district court accurately instructed the

---

[5] Craft states that Donald Emery, director of labor relations for Yellow Freight, testified that Yellow Freight "had no obligation to reasonably accommodate a disabled employee by offering light duty, since the [bargaining agreement] only provided for modified duty for workers' compensation injuries." Appellant's Opening Br. at 24. Craft mischaracterizes Emery's testimony. When asked whether Yellow Freight would reasonably accommodate a disabled worker, Emery replied that such situations were handled by the company's legal staff and he had little knowledge about the ADA. He did testify that Yellow Freight offered "modified work" only to employees receiving workers' compensation. The bargaining agreement permitted Yellow Freight to establish a modified work program for employees who were unable to perform their normal work assignments due to on-the-job injuries. Emery's testimony indicates, however, he did not equate "reasonable accommodation" with "modified work," and that he understood reasonable accommodation was covered by the ADA.

Craft also points to Hazard's testimony that he did not believe the ADA ever required an employer to provide light duty to an employee. While Hazard's testimony may indicate he personally was unclear of Yellow Freight's obligations under the ADA, it does not indicate Yellow Freight sought to evade its obligations by reliance on the bargaining agreement. Cowin testified it was not Yellow Freight's position that Yellow Freight and the Union could agree to something that would violate Craft's rights under the ADA.

jury on the elements of Craft's ADA claim and on Yellow Freight's responsibilities under the ADA. "[W]here the instructions given by the court fairly and adequately cover the material issues, it is not error to refuse requested instructions even though they are correct statements of law." Harwell v. United States, 316 F.2d 791, 794 (10th Cir. 1963). The district court did not err in refusing Craft's tendered instruction.

## Motion for Judgment as a Matter of Law on ADA Claim

On appeal, Craft argues the district court erred in denying his motion for a new trial/judgment notwithstanding the verdict. Yellow Freight responds Craft did not move for new trial but only for judgment notwithstanding the verdict. Yellow Freight further submits that because Craft did not move for judgment as a matter of law at the close of evidence, he did not satisfy the procedural prerequisites for judgment as a matter of law and is therefore precluded from challenging the denial of his motion. After the jury returned a verdict for Yellow Freight, Craft moved for a judgment notwithstanding the verdict. Craft asked the court to enter its own findings and conclusions as to disability, discrimination, and back pay. He asserted he had been entitled to reinstatement as of the effective date of the ADA as a matter of law.

A motion denominated as a motion for directed verdict or for judgment notwithstanding the verdict should be treated as a motion for judgment as a matter

of law. Fed. R. Civ. P. 50 advisory committee notes on 1991 amendment. A party must first move for judgment as a matter of law before submission of the case to the jury. Fed. R. Civ. P. 50(b). He may then renew his motion after trial. Fed. R. Civ. P. 50(c). This court may not consider an appellant's contention that the trial court erred in denying a motion for judgment notwithstanding the verdict or for judgment as a matter of law where the appellant failed to move for a directed verdict or judgment as a matter of law at the close of evidence. Firestone Tire & Rubber Co. v. Pearson, 769 F.2d 1471, 1478 (10th Cir. 1985).

Craft contends the district court considered his post-trial motion as a Rule 59 motion for new trial. The court stated "the test for judgment notwithstanding the verdict really requires [the court] to find that there is absolutely no evidence in [the] record to support what the jury did, and to basically find that as a matter of law their verdict is erroneous." Appellant's App. III at 1107. Craft submits the court's comment demonstrates his motion asserted the verdict was against the weight of the evidence, an argument recognized under Rule 59. Indeed, the district court must grant a Rule 59 motion for new trial where the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1365 (10th Cir. 1994). The court's statement in this case was equally applicable to a Rule 50 motion for judgment as a matter of law. See Fed. R. Civ. 50(a) (permitting court to grant

motion for judgment as a matter of law where there is no legally sufficient evidentiary basis for the jury's finding). Both Craft and the district court referred to Craft's motion as one for judgment notwithstanding the verdict and Craft asserts in his notice of appeal that he was appealing the denial of his motion for judgment notwithstanding the verdict. Further, Craft indicated in his docketing statement that he had moved for judgment *under Rule 50(b)*. Craft cites no authority for construing his Rule 50 motion as a Rule 59 motion. By failing to move for judgment as a matter of law before submission of the case to the jury, Craft failed to preserve the issue of the denial of his post-trial motion. <u>Firestone</u>, 769 F.2d at 1478.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge