**Ronald J. BARNETT, Plaintiff,**

v.

**The BOEING COMPANY, Defendant.**

**No. 99–1215–MLB.**

United States District Court,
D. Kansas.

Nov. 15, 2001.

Paul S. McCausland, Young, Bogle, McCausland, Wells & Blanchard, Wichita, KS, J. Michael Peters, Shaw, Hergenreter, Quarnstrom, Topeka, KS, for Plaintiff.

Mary K. Babcock, Jay F. Fowler, Boyd A. Byers, Donald D. Berner, Foulston & Siefkin L.L.P., Wichita, KS, for Defendants.

## MEMORANDUM AND ORDER

BELOT, District Judge.

## • INTRODUCTION

Plaintiff Ronald Barnett brings this Title VII race discrimination case against his employer, Boeing, claiming he was denied a promotion to numerous inspector vacancies filled between March 7, 1997 and June 17, 1997. Plaintiff claims he was qualified for each of the positions but was not promoted because of his Hispanic ancestry. Defendant claims that plaintiff would have been promoted to inspector but for his shoddy attendance record.

This case is currently before the court upon defendant's third motion for summary judgment. Doc. 96.[1] Plaintiff originally alleged both disparate impact and disparate treatment theories of recovery. Defendant's first motion, later withdrawn, challenged plaintiff's claims on the basis of the statute of limitations. Doc. 23. The second motion resulted in the dismissal of plaintiff's disparate impact claim for failure to exhaust administrative remedies. See Doc. 87. The court also granted partial summary judgment with respect to plaintiff's disparate treatment claim, finding that acts occurring before March 6, 1997, or between June 17, 1997 and February 18, 1998 were barred for failure to exhaust administrative remedies. See *id.* The present motion seeks to dismiss the remainder of plaintiff's disparate treatment claim, specifically with regard to acts occurring between March 7, 1997 and June 17, 1997. For the reasons stated, defendant's motion for summary judgment is DENIED.

---

1. Also before the court are (1) Defendant's Memorandum in Support, (2) Attachments to Defendant's Memorandum in Support, (3) Plaintiff's Memorandum in Opposition, and (4) Defendant's Reply Memorandum in Support. Docs. 97, 98, 104, and 108.

**A. Summary Judgment Standard: FRCP 56**

The usual and primary purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Fed.R.Civ.P. Rule 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citations omitted). In determining whether such an issue of fact remains, the court must review the "factual record and reasonable inferences therefrom in the light most favorable to the nonmoving/opposing party." *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir.1996).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. See *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir.1991).

**B. Facts** [2]

Boeing hired plaintiff as a Grade 4 sheet metal assembler in July 1987. Doc. 97, ¶ 3. When he was hired, Boeing gave plaintiff the option of identifying his race for affirmative action and record-keeping purposes. Plaintiff did not identify himself as Hispanic, and Boeing classified him as Caucasian in its electronic record-keeping system. Doc. 97, ¶ 4.

Plaintiff wanted a promotion to an inspector position in Struts or Nacelles, two separate Responsibility Centers that are housed in different sides of the same building. Doc. 97, ¶ 6. Boeing filled over 25 inspector positions between March 7, 1997 and June 17, 1997 (Doc. 104, p. 14), but it is unclear how many of those positions were filled in Struts and Nacelles. Plaintiff did not seek a promotion to the inspector position at any other location outside of Struts or Nacelles. Doc. 97, ¶ 7.

Tony Sacket was the second-level manager responsible for staffing the Struts Responsibility Center. If Sacket determined that additional inspectors were needed, he would request additional staffing from his supervisor. If the request was approved by upper management, a "requisition" for the position would be generated. Sacket would then have several first-level managers review the list of candidates. Each of the first-level managers would typically select two or three candidates, narrowing the list to about ten to twelve candidates. The first-level managers would then discuss those candidates and, acting as a group, further narrow the

---

**2.** All facts set forth are either uncontroverted, or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff. See *Hall v. United Parcel Serv.*, No. Civ. A. 992467–CM, 2000 WL 1114841, at *5 (D.Kan. July 31, 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d at 670). Any factual disagreements between the parties will be noted.

list to approximately six candidates. After the management group cut the list down to about six candidates, either Sacket or the first-level manager who needed to fill the position would interview candidates and make the final decision to promote. See Doc. 97, ¶¶ 13–18. Frank Rollins was the second-level manager in the Nacelles Responsibility Center. Unlike Sacket, Rollins did all the interviewing and made all promotion decisions himself. Doc. 97, ¶ 25.

On March 7, 1997, Dwayne Blackburn, one of Sacket's first-level managers, met with plaintiff. Blackburn told plaintiff that he had not been selected for a promotion at that time, because "it was real political and not enough people [i.e., the other first-level managers] knew [him]." Doc. 97, ¶ 28. Blackburn also told plaintiff, and plaintiff believed, that the reason he was not being promoted was because "they had to hire some women" to fill inspector positions. Doc. 97, ¶ 30.

On May 21, 1997, plaintiff filed a complaint with Boeing's Equal Employment/Workforce Diversity department alleging that Blackburn had discriminated against him because of his race. The EEO Administrator, Adam Gomez, told plaintiff that Boeing's records identified him as Caucasian. Plaintiff then filled out a Race Code Status Change form requesting that his race be changed from Caucasian to Hispanic. Doc. 97, ¶ 32.

On June 17, 1997, Blackburn interviewed plaintiff for a promotion to another inspector position and informed plaintiff that he intended to recommend him for the job. Blackburn explained that the formal offer had to come from Personnel. Blackburn then contacted Personnel and requested that plaintiff be offered the inspector position. Doc. 97, ¶¶ 33, 34. Sara Leach, a Personnel Representative, reviewed plain-

tiff's attendance and discipline history. She saw that plaintiff had an active disciplinary notice for attendance and 67 hours of unexcused leave in the first five months of 1997.[3] Doc. 97, ¶ 35. After discussing plaintiff's attendance with Leach, Blackburn requested a printout of plaintiff's attendance history. The printout showed that plaintiff had 67.7 hours of unexcused leave in 1997, 120.6 hours of unexcused leave in 1996, and 116.1 hours of unexcused leave in 1995. Doc. 97, ¶ 37.

On June 18, 1997, Blackburn called plaintiff into his office and told him that he would not be receiving the job offer because of his attendance record. Doc. 97, ¶ 38. Plaintiff believed that some of his attendance records were in error, and he set out to correct them. By July 31, 1997, plaintiff had "cleaned up" his record to show only 48.2 hours of unexcused absences for 1996 (reduced from 120.6 hours) and 46.5 hours for the first five months of 1997 (reduced from 67.7 hours). Doc. 97, ¶¶ 39, 41.

On October 15, 1998, R.L. Clark, Boeing's Equal Opportunity/Workforce Diversity Manager, provided the Kansas Human Rights Commission with summaries of the persons promoted to inspector from January through June, 1997. Doc. 104, Exh. A, RJB 1099. Clark concluded by stating:

> The information you have requested makes it clear that [plaintiff] was not denied promotion to the 544–06 Inspection job because of his minority status. In fact, during the time frame [plaintiff] alleges he was discriminated against, 17.9 percent of the employees transferred into the 544–06 Inspection job were minorities. If the three new hires are also considered then the percentage rate of minorities hired into this job increases to 19.0 percent.

**3.** Plaintiff received a Notice of Correction Counseling ("NCC") for attendance on April 15, 1997. This NCC remained "active" for six months after it was issued. Doc. 97, ¶ 31.

*Id.* at 1100. Plaintiff takes a different view, emphasizing that while at least twenty-four positions were filled by white candidates, no Hispanics were promoted during the period subject to plaintiff's claim. See Doc. 104, Add'l Facts at ¶ 4. In fact, only one position was ever filled with an Hispanic candidate.[4] See Doc. 97, ¶ 64. That position went to Jose Diaz, who was promoted on January 5, 1998, well after plaintiff filed his charge of discrimination. See Doc. 104, ¶ 63.

Of those promoted, at least three had unexcused attendance hours equal to or exceeding plaintiff's corrected attendance figures in the year they were promoted.[5] Lonie Nolan, a black male, was promoted March 24, 1997. Nolan had 129.4 hours of unexcused absence in 1997, 71.8 of which accrued prior to his promotion. *Id.* at 1102. Felisa Fortner, a white female, was promoted June 13, 1997. She had 46.5 hours of unexcused absence in 1997. *Id.* at 1103. Kathy Morris, a white female, was promoted June 23, 1997, six days after plaintiff was denied a promotion. She had 65.3 hours of unexcused absence in 1997. *Id.* at 1103. None of those promoted, except for Jose Diaz, had active disciplinary complaints. See Doc. 97, ¶ 59.

## ● ANALYSIS

### A. McDonnell Douglas Framework

In Title VII cases, the primary inquiry is whether defendant intentionally discriminated against plaintiff based on protected class characteristics. See *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir.1992). A plaintiff may prove in-tentional discrimination either by directly persuading the court that a discriminatory reason motivated the employer's actions or by showing that the employer's proffered explanation is unworthy of belief. See *Jones v. Denver Post Corp.*, 203 F.3d 748, 752 (10th Cir.2000). A personnel policy that is discriminatory on its face, for example, provides direct evidence of intentional discrimination. See *id.* (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121–22, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). Where, as here, there is no direct evidence of discrimination, the court must evaluate plaintiff's case on the basis of indirect evidence.

In Title VII cases based on indirect evidence, plaintiff has the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If plaintiff does so, then defendant must "articulate some legitimate, nondiscriminatory reason" for the challenged personnel action. *Id.* Plaintiff then bears the ultimate burden of demonstrating that defendant's stated reason is in fact a pretext for unlawful discrimination and, therefore, unworthy of belief. See *id.* at 804, 93 S.Ct. 1817. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

4. Boeing's historical computer archives show that from June 21, 1996 to August 10, 1998, 979 employees requested a promotion or transfer to the 544–06 inspector position. Of those employees, 183, or 18.7%, were of a minority race. Twenty-four, or 2.5%, were Hispanic. Doc. 97, ¶ 65.

5. Plaintiff also points to Bill Heath, a white male, who was promoted April 1, 1997. Heath had 89.1 hours of unexcused absence in 1997. According to the summary, 73.1 of those hours occurred after his promotion. Doc. 104, Exh. A, RJB 1102. Although that distinction is an important one, the summaries do not always distinguish between the employee's total hours of unexcused absence received in a year and the number received after his or her promotion.

## B. Failure to Promote

### 1. Prima Facie Case

■ To establish a prima facie case for failure to promote, plaintiff must show that (1) he is a member of a minority group, (2) he was qualified for the promotion, (3) he applied for the position at issue, (4) he was not promoted, and (5) the position was filled or remained open after his application. See *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir.2001); *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir.2000) (noting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir.2000) rejected the requirement that plaintiff must allege the position was filled by someone outside of plaintiff's protected class). Defendant challenges plaintiff's prima facie case on two grounds: (1) that plaintiff was not qualified for the promotion and (2) that the last element of plaintiff's prima facie case still requires a showing that the position was filled by a non-minority.

### a. Was plaintiff qualified for promotion to inspector?

■ Although plaintiff possessed the blueprint reading and mechanical skills necessary to be promoted, defendant claims he was not qualified for the position because he failed to satisfy the attendance and discipline history requirements that Blackburn imposed as hiring manager. Doc. 97, pp. 17–18. The court agrees with plaintiff, however, that defendant's argument is better considered at the pretext stage of analysis and should not be used to short-circuit plaintiff's prima facie case. See *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000)("When an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case."). Defendant argues that Horizon is distinguishable because it is limited to objective, employer-imposed qualifications that have no bearing on an applicant's ability to perform the job sought. Here, plaintiff's excessive absenteeism related directly to his ability to perform as an inspector. While Horizon can certainly be distinguished on that basis, its relevance is bolstered by *Burrus v. United Tel. Co. of Kansas*, 683 F.2d 339 (10th Cir.1982), the case upon which its rationale is based. In Burrus, the defendant alleged that the plaintiff lacked certain interpersonal skills, making her unqualified for the position sought. 683 F.2d at 342. The court concluded that allowing a defendant to rely on subjective qualifications to defeat a plaintiff's prima facie case would deny the plaintiff the opportunity to demonstrate that those subjective criteria were a means to effect a discriminatory action. See *id.* at 342.

Here, although defendant's promotion procedures were objective in the sense that plaintiff's attendance and discipline history were considered, the manner in which the procedures were applied was entirely subjective. According to defendant, "[t]here was no bright line rule" in applying the good attendance criterion and each hiring manager "applied his or her own rule of thumb." Doc. 97, ¶ 23. Blackburn's guideline was that ten to thirty hours or more of unexcused leave per year was cause for concern, whereas Sacket considered leave in excess of forty hours to be a problem. See *id.* Moreover, the manner in which each manager investigated attendance problems, once discovered, differed considerably. After Sacket learned that Kathi Morris had an attendance problem, he investigated, learned that her absences were for an FMLA-protected reason, and promoted her anyway. See Doc. 97, ¶ 48. Blackburn, on the other

hand, left plaintiff to "clean up" his own attendance record—which also included FMLA-protected leave—and denied his promotion without further consideration. See Doc. 97, ¶¶ 40, 41. Similarly, although Blackburn never promoted an employee with an active disciplinary complaint, Sacket promoted Jose Diaz, an Hispanic male who had an active disciplinary complaint for failure to accomplish assigned work. See Doc. 97, ¶ 59.

■ The inconsistency with which defendant's attendance and discipline policies were applied leaves the court hard-pressed to rule, as a matter of law, that plaintiff was unqualified for the position at issue. To do so at the prima facie stage, without allowing plaintiff to demonstrate that defendant's subjective approach was a means to effect discriminatory action, would frustrate the McDonnell Douglas burden-shifting analysis. See *Burrus*, 683 F.2d at 342. The relevant inquiry at the prima facie stage, after all, is not whether an employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that he possesses the objective qualifications necessary to perform the job sought. See *Horizon*, 220 F.3d at 1193–94. There is no dispute that plaintiff possessed the blueprint reading and mechanical skills necessary to perform as an inspector and, in the court's view, that evidence suffices at the prima facie stage regardless of plaintiff's attendance and disciplinary history. See *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (holding that plaintiff had made out her prima facie case even though her qualifications were disputed by defendant).

**b. Did plaintiff satisfy the last element of his prima facie case?**

■ According to defendant, the last element of plaintiff's prima facie case still requires that the position be filled by a non-minority or, at the very least, requires that plaintiff show he was treated differently than similarly-situated co-workers. See Doc. 97, p. 16. Because one of the positions plaintiff sought was filled by an American Indian applicant, defendant argues that plaintiff's claim must fail. Doc. 97, p. 17. In making its argument, however, defendant relies upon cases that were either decided before or do not mention the Tenth Circuit's clarification of the last element in Kendrick, Amro, and Bennett. The latter cases make clear that plaintiff is not required to show the position was filled by someone outside of his protected class. See, e.g., *Amro*, 232 F.3d at 796; *Kendrick*, 220 F.3d at 1228–29.

■ The court declines to apply a more stringent standard here than that annunciated in Kendrick and cases following. As the Tenth Circuit has repeatedly stated, "the burden imposed on a plaintiff at the prima facie stage is 'not onerous.'" *Horizon*, 220 F.3d at 1197 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207, (1981)). Furthermore, plaintiff can satisfy his burden "in a number of ways." *Horizon*, 220 F.3d at 1195 n. 6. Plaintiff has done so here by showing that over 25 of the positions he sought were actually filled, regardless of the successful applicants' racial status. Cf. *Ortiz v. Norton*, 254 F.3d 889, 895 (10th Cir.2001)(holding district court erred in discriminatory discharge case by forcing plaintiff to compare himself to "similarly situated" employees where plaintiff needed only show that job was not eliminated).

**2. Legitimate, Non-discriminatory Motive**

■ Having met his prima facie burden, plaintiff has shifted the burden to defendant to advance a legitimate, non-discriminatory motive for its actions. See *Bur-*

*dine*, 450 U.S. at 254–55, 101 S.Ct. 1089; *Kendrick*, 220 F.3d at 1226. Plaintiff argues that defendant has failed to proffer a legitimate non-discriminatory reason as to why he was passed over for twenty-four of the positions given to white candidates from March 7 to June 17, 1997. Doc. 104, p. 15. In response, defendant states that plaintiff would have been granted a promotion but for his attendance problem and disciplinary history. While that explanation sufficiently discharges defendant's burden as to the June promotion, its reasons for denying the remaining promotions are less clear.[6]

Defendant explains that there were approximately 400 employees on the list of candidates for the inspector position at any given time. Because the list of candidates was so long, the supervisors in each location would typically review the list for candidates they already knew. Doc. 108, pp. 7–8. On March 7, 1997, Blackburn told plaintiff that he had not been promoted, at that time, because "it was real political and not enough people [i.e., the other first-level supervisors] knew [him]." Doc. 97, ¶ 28. According to plaintiff, Blackburn also told him, and he believed, that the reason he was not being promoted was because "they had to hire some women" into inspector positions.[7] *Id.* at ¶ 30. Defendant, however, never specifically offers Blackburn's latter statement as a nondiscriminatory reason for its actions; it only states that was what plaintiff believed. See Doc. 108, p. 8. Defendant never suggests, by affida-

vit or otherwise, that Blackburn actually denied plaintiff's promotion because he "had to hire some women." Because defendant never articulates it as a nondiscriminatory reason, the court declines to consider Blackburn's latter statement in determining if defendant has met its burden of production.

But what of Blackburn's "political" explanation? Although it may have been sufficient to explain why plaintiff was not promoted in early March, the court cannot automatically assume that all subsequent promotions were denied for the same reason. Despite defendant's attempt to extend Blackburn's "political" explanation to all of its actions before June 1997, the record makes clear that Blackburn's March 7, 1997 statement was explicitly limited to why plaintiff was not promoted at that time. Moreover, while Blackburn's explanation may have explained why plaintiff was not promoted to a position in Struts in March, it offers no insight as to why plaintiff was not promoted to available positions in Nacelles. Unlike Sacket in Struts, Rollins, the second-level manager in Nacelles, made all promotion decisions himself and did not rely on first-level supervisors to review the list of candidates. Doc. 97, ¶ 25. Rollins' approach takes plaintiff's "political problem," i.e., that none of the first-level supervisors knew him, out of the equation.

Defendant suggests that the "obvious" reason plaintiff was not promoted to these

---

**6.** Because plaintiff's attendance and discipline history were not evaluated until June 17, 1997, it cannot provide a basis for defendant's actions before that time.

**7.** From this, defendant argues that plaintiff actually believes "the real reason he was not promoted was sex discrimination," and that belief, if taken as true, "fatally cripples" his race discrimination claim. Doc. 97, p. 18; See *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 328 (10th Cir.1996)(holding plaintiff fa-

tally crippled his ADEA claim by advancing a theory of FLSA retaliation to counter defendant's proffered nondiscriminatory motives). Unlike the plaintiff in Marx, however, plaintiff does not rely upon evidence of sex discrimination to establish pretext here. He merely relates that as Blackburn's explanation for why he was not promoted. The fact that plaintiff believed what Blackburn told him should not now preclude him from demonstrating that the explanation was merely a pretext for racial discrimination.

positions is that "he was not seeking a promotion at any location other than the Struts and Nacelles building [Facts ¶ 7], and there is no evidence any of these other promotions were in that location." Doc. 108, p. 8. Similarly, defendant argues that "there is no evidence as to who the hiring managers were that made these promotions and whether these managers ever knew who plaintiff was." *Id.* at pp. 8–9. While those might constitute perfectly legitimate, nondiscriminatory reasons if articulated, defendant does nothing more than point to a lack of evidence. In doing so, defendant forgets that it has the burden of production at this stage of the proceedings. See *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089 ("[D]efendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection."). In fact, defendant is in a much better position than plaintiff to know the areas where these positions were filled and the managers who filled them. In choosing not to bring that evidence to the court's attention, defendant has failed to articulate additional nondiscriminatory reasons for its actions.

Although defendant adequately articulated the reasons for plaintiff's March and June rejections, it has failed to articulate a nondiscriminatory reason for rejecting plaintiff for the promotions filled between that time. As such, defendant has not altogether dispelled the inference of discrimination raised by plaintiff's prima facie case. Furthermore, to the extent defendant has adequately discharged its burden of production, plaintiff has offered sufficient evidence of pretext to survive summary judgment.

### 3. Evidence of Pretext

 Plaintiff can withstand defendant's summary judgment motion by presenting evidence sufficient to raise a genuine dispute of material fact as to whether the defendant's articulated reasons for its

actions are pretextual. See *Horizon,* 220 F.3d at 1197. For example, a plaintiff may establish pretext by showing that the defendant's stated reasons for the adverse employment action were false. Establishing pretext is not, however, limited to showing falsity. *Patterson v. McLean Credit Union,* 491 U.S. 164, 187, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)(stating plaintiff may not be forced to pursue any particular means of demonstrating pretext). Rather, a plaintiff can also establish pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons that a reasonable fact finder could rationally find them unworthy of belief. See Horizon, 220 F.3d at 1198. In other words, evidence of pretext may "take a variety of forms." See Horizon, 220 F.3d at 1198 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

Plaintiff has presented evidence that (1) his attendance problem was not as severe as originally suggested, (2) that his unpaid absences were raised as an issue only after he filed an internal EEO complaint, (3) that prior to June 17, 1997, he was not promoted to more than twenty-four vacant positions filled by white candidates, (4) that a white applicant with a worse attendance record than his was promoted six days after Blackburn raised plaintiff's attendance as an issue, (5) that after plaintiff corrected numerous errors in his attendance report, Blackburn and other managers still failed to promote him to vacant positions, and (6) that no Hispanics were promoted in the period subject to plaintiff's claim.

 Defendant first argues that plaintiff's evidence of pretext is "improperly supported" and "inadmissible." Doc. 108, pp. 4, 8. Most of plaintiff's evidence of pretext comes from R.L. Clark, Boeing's

Equal Opportunity/Workforce Diversity Manager, and his letter the KHRC detailing the inspector positions filled by Boeing between March and June 1997. Defendant argues that the court cannot consider Clark's letter because it "was not authenticated through any supporting affidavit or deposition testimony." Doc. 108, p. 4. The parties' agreed pretrial order, however, provides that "EEOC records, KHRC records, and Boeing records regarding plaintiff may be offered into evidence without further foundation from records custodians as to their genuineness and authenticity." Doc. 91, ¶ 13(a). In light of the parties' agreed pretrial order, the court sees no harm in considering this evidence and finds defendant's objection to its own records on authenticity grounds rather ill-conceived. See *Thomas v. Int'l Bus. Mach's.*, 48 F.3d 478, 485 (10th Cir.1995)(stating that, on a motion for summary judgment, evidence need not be presented in a form that would be admissible at trial as long as the content or substance of the evidence would be admissible).

 Defendant next argues plaintiff's evidence cannot support a finding of pretext because he has not shown that any of the other employees he compares himself to "were similarly situated in all respects, e.g., same location, same supervisor, same circumstances regarding absences, etc." Doc. 108, pp. 9–10 & n. 6 (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1405 (10th Cir.1997)). In particular, defendant argues plaintiff's claim should fail because he did not share the same supervisor as the other employees. Where plaintiff contends he is the victim of the discriminatory application of a facility-wide policy, however, the failure of the plaintiff to share the same supervisor does not preclude the consideration of evidence of disparate treatment. See *Gossett v. Oklahoma Board of Regents*, 245 F.3d 1172, 1178 (10th Cir. 2001); *Horizon*, 220 F.3d at 1198 n. 10.

Although defendant views plaintiff's discrimination claim as one against Blackburn only, plaintiff clearly extends his allegations to each of the supervisors to whom he submitted his resume. See Doc. 104, ¶ 46. Arguably then, plaintiff's claim is one of company-wide discrimination where such evidence of pretext may be considered.

 In this case, however, plaintiff's prima facie case and the inferences drawn therefrom cast sufficient doubt on defendant's nondiscriminatory reason to satisfy plaintiff's burden of showing pretext. See *English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1009 (10th Cir.2001) (citing *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097). The court's duty is to determine whether plaintiff's allegations, supported by affidavits, depositions, and other factual evidence create a genuine issue of material fact as to whether defendant's proffered reasons for not promoting plaintiff are mere pretext. Based on the foregoing evidence, the court finds that a reasonable jury could conclude defendant intentionally discriminated against plaintiff due to his Hispanic heritage. Defendant's motion for summary judgment is, therefore, DENIED.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in *Comeau v. Rupp*, 810 F.Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.