United States Court of Appeals,

Fifth Circuit.

No. 92-1650

Summary Calendar.

Ann Marie LINDSEY, Plaintiff-Appellant,

v.

PRIVE CORPORATION, d/b/a Cabaret Royale, Defendant-Appellee.

Linda YORK, Plaintiff-Appellant,

v.

PRIVE CORPORATION, d/b/a Cabaret Royale, Defendant-Appellee.

April 7, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, JOLLY and EMILIO M. GARZA, Circuit Judges.

POLITZ, Chief Judge:

Ann Marie Lindsey and Linda York appeal adverse summary judgment on their age discrimination claims against their former employer, Prive Corporation d/b/a Cabaret Royale. For the reasons assigned we vacate and remand.

## Background

Lindsey and York were employed as head waitresses shortly after the opening of the Cabaret Royale in Dallas. The Cabaret Royale bills itself as an upscale gentlemen's club, boasting of providing the finest service, atmosphere, and entertainment. Its facilities include a gourmet restaurant, conference room with office services, a boutique, wide-screen viewing of sports events, and topless dancing.

Lindsey invoked the Age Discrimination in Employment Act,[1] claiming a constructive discharge as a head waitress and an unlawful denial of a promotion to position of entertainer, specifically a topless dancer. York claims an unlawful discharge as a head waitress.

_____

[1] 29 U.S.C. § 621 _et seq._

Lindsey was hired in January 1989. Two months later she sought promotion to dancer. She spoke with one of the managers and that same evening she was summoned into the office of the general manager, Brian Paul, and told that she was "too old" to be a dancer.[2] York was present at the time. In ensuing weeks several younger waitresses were promoted to dancer. Finally, on May 8, 1989, Lindsey resigned and immediately became employed as a dancer at the Million Dollar Saloon. Caberet Royale contends that Lindsey was not qualified to be one of its dancers because she failed to meet its attractiveness standard, specifically, she was not "beautiful, gorgeous, and sophisticated."

York also began working as a waitress in January 1989. On May 8, 1989 she left work around 1:30 a.m. claiming to be ill. As she left she saw a regular customer, Kevin Hale, waiting for a cab and she gave him a ride home. When she returned to work two days later she was informed that she was fired. She maintains that no reasons were assigned for her dismissal. Cabaret Royale responds that she was terminated because she violated the club's prohibition against leaving with customers. York counters that younger waitresses were not disciplined for the identical behavior.

Both Lindsey and York were over forty years old at the time of the adverse employment decisions. The summary judgment record reflects that the Cabaret employed only one other non-management female over age forty, Joy Tarver, a dancer who also was terminated at the same time.

The district court granted defendant's motion for summary judgment, concluding that neither Lindsey nor York had established a *prima facie* case of age discrimination. Alternatively, the district court found that there were no genuine issues of material fact and that the defendant was entitled to judgment as a matter of law. Lindsey and York timely appealed.

---

[2]According to Lindsey's deposition, Paul told her:

> It was something like, Ami, I know the kind of person you are and I know you want me to shoot from the hip. And I said, yes. And he said, you undoubtedly have the best chest of any waitress on the floor, but Cabaret patterns itself after Rick's in Houston and the young waitresses are the future dancers ... at Rick's and will be here at Cabaret and then he stuttered and hesitated. And I said, so what are you saying? And he said, Ami, you are too old.

Analysis

When reviewing a summary judgment we apply the same standard as the district court.[3] Under Fed.R.Civ.P. 56(c), a summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, reflects no genuine issues of material fact.[4]

A plaintiff may establish a claim of employment discrimination by the triad analysis first enunciated in *McDonnell Douglas Corp. v. Green.*[5] The ADEA plaintiff must first establish a *prima facie* case of age discrimination,[6] after which the defendant is given an opportunity to articulate a legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff. If the defendant successfully does so, the plaintiff bears the burden of demonstrating that the reason was pretextual. The ultimate burden of persuasion remains with the plaintiff.[7]

Lindsey

The district court found that Lindsey failed to present a *prima facie* case of discrimination because she failed to demonstrate that she was qualified to be a dancer. Generally, a *prima facie* ADEA case of failure to hire or promote consists of evidence that the plaintiff: (1) was within the protected class and was adversely affected; (2) was qualified for the position; and (3) the job remained open or was filled by someone younger.[8] The district court accepted the Cabaret Royale's contention that to be qualified, dancers must be "beautiful, gorgeous, and sophisticated," and that the club found Lindsey did not meet this standard. Lindsey contends that the district court erred in requiring her to prove as part of her *prima facie* case that she met the club's subjective criteria. We

---

[3]*Latimer v. Smithkline & French Laboratories,* 919 F.2d 301 (5th Cir.1990).

[4]*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[5]411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1981). Although *McDonnell Douglas* was a Title VII case, this approach has been applied in ADEA cases. *Thornbrough v. Columbus & Greenville R. Co.,* 760 F.2d 633, 638-39 n. 4 (5th Cir.1985).

[6]*Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503 (5th Cir.1988).

[7]*Id.*

[8]*Id.*

agree. Subjective criteria should not be considered a part of the *prima facie* evaluation in a summary judgment proceeding.

Several of our circuit colleagues have concluded that a *prima facie* case is established once the plaintiff demonstrates that objective employment qualifications have been met.[9] For example, the Tenth Circuit concluded that in the *McDonnell Douglas* three-step analysis:

> objective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process. To do otherwise would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved. This would defeat the purpose underlying the *McDonnell Douglas* process.[10]

Our colleagues concluded that whereas subjective employment criteria may serve legitimate functions, they also provide opportunities for unlawful discrimination. Based upon that conclusion, they held:

> If a plaintiff's failure to establish that she met the employer's subjective criteria could defeat her prima facie case, the court would then not be required to consider evidence of pretext. Thus the use of the subjective criteria would go unchallenged. This result is clearly at odds with the mandate of *McDonnell Douglas* that a plaintiff be afforded a full and fair opportunity to demonstrate that the stated reason for rejection was in fact pretext.[11]

Cabaret Royale invites our attention to the Eleventh Circuit decision in *Hill v. Seaboard Coast Line R. Co.*[12] We find that decision inapposite for it was not in a summary judgment setting but, rather, was after trial on the merits.[13] In ruling on a summary judgment motion it is not appropriate for the district court to determine whether subjective criteria are bona fide and, more

---

[9]*Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132 (7th Cir.1985); *Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Lynn v. Regents of the University of California,* 656 F.2d 1337 (9th Cir.1981), *cert. denied,* 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982).

[10]683 F.2d at 342 (quoting *Lynn,* 656 F.2d at 1344; further citations omitted).

[11]683 F.2d at 342.

[12]885 F.2d 804 (11th Cir.1989).

[13]After a trial on the merits, disputes about the *prima facie* case fall away and we need only resolve the question whether there was sufficient evidence of unlawful discrimination. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

critically, to make dispositive determinations about the employer's credibility.[14]  The district court

noted the difficulty it faced, a recognition which effectively ruled out the propriety of the summary

judgment mechanism.  The court stated:

> This court cannot second guess Defendant's opinion that Plaintiff Lindsey was not beautiful, gorgeous, and sophisticated enough to be an entertainer at the Cabaret Royale.  Beauty is in the eye of the beholder and the beholder in this case is the management of Defendant.  Defendant is entitled to determine who satisfies its criteria.

That is entirely correct, but the ultimate trier-of-fact must decide who to believe, a function not

performed in a summary judgment setting.

We are mindful and agree that "[t]he ADEA was not intended to be a vehicle for judicial

second-guessing of business decisions, nor was it intended to transform the courts into personnel

managers."[15]  In this case, however, the question left for the judge or jury will not require second

guessing of the defendant's personnel decisions but, rather, will require an evaluation of the credibility

of the defendant's testimony about the reasons for that decision—the trier-of-fact will evaluate

truthfulness, not beauty.  We have recognized the potential of subjective criteria to provide cover for

unlawful discrimination.[16]  We have observed:  "Establishing qualifications is an employer's

prerogative, but an employer may not utilize wholly subjective standards by which to judge its

employees' qualifications and then plead lack of qualification when its promotion process, for

example, is challenged as discriminatory."[17]

In opposition to defendant's motion Lindsey presented evidence that:  (1) immediately after

leaving Cabaret Royale she secured a position as dancer with one of its competitors;  (2) several

Cabaret Royale customers had urged her to become a dancer;  (3) a former business manager of the

---

[14]In a motion for summary judgment, the district court is not called upon to make credibility assessments of conflicting evidence;  to the contrary, all evidence is considered in the light most favorable to the non-movant.

[15]*Thornbrough,* 760 F.2d at 647.

[16]*Crawford v. Western Electric Co.,* 614 F.2d 1300 (5th Cir.1980);  *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972).

[17]614 F.2d at 1315 (citing *Rowe,* 457 F.2d at 358-59).

Cabaret attested that it had hired many women as dancers who were not as attractive as Lindsey;[18] and (4) all three waitresses/dancers over forty were dismissed at the same time. It cannot be said that this record poses no genuine issue of material fact nor that plaintiffs failed to establish a *prima facie* case of age discrimination. Summary judgment does not lie.

## York

York likewise contends that age was the dominant factor in her discharge. Cabaret Royale contends that she was dismissed for violating the club's policy prohibiting waitresses and dancers from leaving the establishment with customers. The policy obviously is designed to prevent even the appearance that the club is facilitating prostitution. This clearly is a legitimate business reason for discharge. Summary judgment is inappropriate, however, because the summary judgment record contains evidence that the rule was disparately applied—younger employees left with customers and were not similarly disciplined. Further, apparently the Cabaret's disciplinary policy requiring two written warnings before discharge were ignored in York's case. Once again, a critical credibility assessment must be made. That assessment is not fit grist for the summary judgment mill.

For the foregoing reasons we VACATE the judgments rendered and REMAND for further proceedings consistent herewith.

---

[18] Frank Casperson's affidavit attests that he was a general manager at the Cabaret Royale from mid-December 1988 through late February 1989. He states:

> [D]uring my employment at the Cabaret Royale, I was in a position to observe that Cabaret Royale employed many entertainers (dancers), whom Salah Izzedin was aware of and often participated in the selection of, who were not as attractive as Ann Marie (Ami) Lindsey.