Gloria **LONGO,** Plaintiff,

v.

Elaine L. **CHAO,** in her official capacity as the United States Secretary of Labor, Defendant.

No. EP–06–CV–00307–KC.

United States District Court, W.D. Texas, El Paso Division.

Feb. 28, 2008.

---

Mike Milligan, Attorney at Law, El Paso, TX, for Plaintiff.

Eduardo R. Castillo, Assistant United States Attorney, El Paso, TX, for Defendant.

## *ORDER*

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant's "Motion for Summary Judgment" ("Motion"). For the reasons outlined below, the Court hereby **GRANTS** the Motion.

## I. BACKGROUND

The following derives from Defendant's "Proposed Undisputed Facts," Plaintiff's "Response to Defendant's Proposed Undisputed Facts," and the various evidentiary materials attached to the Summary Judgment pleadings.

On February 18, 2003, the Department of Labor's Occupational Safety and Health Administration ("OSHA") released a job vacancy announcement for the position of Industrial Hygienist in El Paso, Texas.[1]

1. Defendant refers to this announcement as OSH–03–053. Def.'s Mot. for Summ. J. Ex.

Def.'s Proposed Undisputed Facts ("Def.'s Facts") ¶ 6; *see* Pl.'s Response to Def.'s Proposed Undisputed Facts ("Pl.'s Resp. to Facts") ¶ 6. The vacancy announcement described the duties and responsibilities of an Industrial Hygienist thus:

> Individually or as a team member conducts inspections and investigations of a wide variety of work processes, operation, and environments in the workplace for compliance with OSHA standards and rule making. Recognizes occupational health standards and recommends abatement action to prevent or eliminate worker exposure to them. Prepares technical reports and case files, attaching documentation of findings, citing alleged violations of standards, assessing proposed penalties, and establishing abatement dates. Provides background information to Office of Solicitor on contested cases, provides testimony and serves as expert witness in legal hearings. Meets and deals with all levels of management and employee representatives.

Pl.'s Resp. To Def.'s Mot. for Summ. J. ("Pl.'s Resp.") Ex. 1 at 2. As a threshold requirement, the vacancy announcement also required that applicants be employed by the federal government in a civil service status. Def.'s Facts ¶ 6; Def.'s Mot. for Summ. J. Ex. 5; *see* Pl.'s Resp. to Facts ¶ 6.

Sometime after the job vacancy announcement was released, Plaintiff Gloria Longo ("Plaintiff") submitted her application for the position. Def.'s Facts ¶ 7; *see* Pl.'s Resp. to Facts ¶ 7. Because she had no prior civil service experience, however, Defendant deemed her ineligible for the position. Def.'s Facts ¶ 7; Def.'s Mot. for

Summ. J. Ex. 6; *see* Pl.'s Resp. to Facts ¶ 7.

Although Plaintiff cannot corroborate Defendant's account,[2] Defendant claims that the initial job vacancy announcement drew a disappointing response. Def.'s Facts ¶ 8; *see* Pl.'s Resp. to Facts ¶ 8. Furthermore, Defendant claims that the small number of applications prompted OSHA to release the job announcement for a second time, this time opening the position up to applicants outside the federal government and civil service. Def.'s Facts ¶ 8; *see* Pl.'s Resp. to Facts ¶ 8. Once OSHA made the decision to solicit applications outside the federal government, the process fell under the administration of Human Resource Specialists in Washington, D.C. Def.'s Facts ¶ 9; Def.'s Mot. for Summ. J. Ex. 7 at 2; *see* Pl.'s Resp. to Facts ¶ 9.

### A. OSHA Hiring Process in 2003

According to Defendant, the OSHA hiring process at the time of Plaintiff's application began at the regional OSHA offices, when an individual office would identify a need and submit a written request to the central office in Washington, D.C. to process a vacancy announcement. Def.'s Facts ¶ 10; Def.'s Mot. for Summ. J. Ex. 7 at 1; *see* Pl.'s Resp. to Facts ¶ 10. From there, a Human Resource Specialist in Washington, D.C. would post the vacancy announcement, including the details and job description forwarded by the regional office, on a government job listings website. Def.'s Facts ¶ 10; Def.'s Mot. for Summ. J. Ex. 7 at 1–2. Within the announcement, applicants would be directed to submit their applications to the OSHA

---

9.

**2.** Plaintiff properly emphasizes that Defendant proffers no evidence to support this con-

tention. Moreover, Plaintiff claims that Defendant has not produced a list of eligible candidates. Pl.'s Resp. to Facts ¶ 8.

office in Washington, D.C. Def.'s Facts ¶ 10; Def.'s Mot. for Summ. J. Ex. 7 at 2.

Once an application came in to OSHA's Washington, D.C. office, the application would be reviewed by a Human Resources Assistant. Def.'s Facts ¶ 11; Def.'s Mot. for Summ. J. Ex. 8 at 1; see Pl.'s Resp. to Facts ¶ 11. At the time that Plaintiff first submitted her application to OSHA, the Human Resources Assistant that would have received her application was Charles Bridges. Def.'s Facts ¶ 12; Def.'s Mot. for Summ. J. Ex. 8 at 1; see Pl.'s Resp. to Facts ¶ 12. By his own account, Mr. Bridges would stamp the application indicating the time and date the application was received and then place the application in the file folder designated for that vacancy announcement. Def.'s Facts ¶¶ 13–14; Def.'s Mot. for Summ. J. Ex. 8 at 1; see Pl.'s Resp. to Facts ¶¶ 13–14. In 2003, Mr. Bridges claims that he would have processed approximately 1,000 applications. Def.'s Facts ¶ 15; Def.'s Mot. for Summ. J. Ex. 8 at 1; see Pl.'s Resp. to Facts ¶ 15.

Upon the closing of the vacancy announcement, a Human Resources Specialist would retrieve the file for that vacancy announcement and determine which applicants were qualified for the position. Def.'s Facts ¶ 21; Def.'s Mot. for Summ. J. Ex. 7 at 2; see Pl.'s Resp. to Facts ¶ 21. According to Defendant, OSHA employed Office of Personnel Management (OPM) Qualifications Standards for each particular series and grade, and if more than three applicants qualified for a particular *series and grade*, the Human Resources Specialist would rate the best qualified candidates. Def.'s Facts ¶¶ 21–22; Def.'s Mot. for Summ. J. Ex. 7 at 2. In contrast, if less than three qualified individuals submitted applications that fell within a certain grade, the applications would be forwarded to the selecting official without these ratings. Def.'s Facts ¶ 24; Def.'s Mot. for Summ. J. Ex. 7 at 2. Under either scenario, Defendant states the Human Resources Specialist would rarely be involved in the decision of who to interview or hire, but rather, those responsibilities would fall upon the selecting official. Def.'s Facts ¶¶ 24–25; Def.'s Mot. for Summ. J. Ex. 7 at 2.

## B. Review of Plaintiff's Applications

After submitting her application for the second announcement[3] seeking an Industrial Hygienist, Plaintiff's application underwent review by Ms. Cynthia Anderson ("Anderson"), the Human Resources Specialist assigned to process that particular vacancy announcement. Def.'s Facts ¶ 33; Def.'s Mot. for Summ. J. Ex. 7 at 4; see Pl.'s Resp. to Facts ¶ 33. Applying the OPM assessment criteria to Plaintiff's application,[4] Anderson rated Plaintiff at the GS–7 level of civil service eligibility. Def.'s Facts ¶ 34; Def.'s Mot. for Summ. J. Ex. 7 at 4. Furthermore, Anderson sent a letter to Plaintiff affirming the same. Def.'s Facts ¶ 36; Def.'s Mot. for Summ. J. Ex. 7 at 4, Ex. 10. In addition to Plaintiff's application, Anderson states that she also processed applications for one other individual who qualified at the GS–7 level and one candidate who qualified for the GS–12 level. Def.'s Facts ¶ 35; Def.'s Mot. for Summ. J. Ex. 7 at 4. Thus, Anderson submitted the list of applicants, consisting of two GS–7 eligible candidates and one GS–12, to the Dallas Regional

---

3. This announcement followed the original announcement, which was only open to those in the civil service.

4. Anderson refers to these benchmarks as *Knowledge, Skills and Assessments*, or by the acronym of KSA. Def.'s Mot. for Summ. J. Ex. 7 at 2.

Office of the Assistant Secretary for Administration and Management ("OASAM"), where OASAM would forward the list of applicants to OSHA. Def.'s Mot. for Summ. J. Ex. 7 at 4. On April 7, 2003, Anderson sent a second correspondence to Plaintiff, this time advising her that her application had been referred to the selecting official for consideration. Def.'s Facts ¶ 38; Def.'s Mot. for Summ. J. Ex. 7 at 4, Ex. 12.

After forwarding the list of applicants to the OSHA Regional Office in Lubbock, Anderson was notified that OSHA wished to re-announce the vacancy position and drop the bilingual requirement. Def.'s Facts ¶ 39; Def.'s Mot. for Summ. J. Ex. 7 at 5, Ex. 13; see Pl.'s Resp. to Facts ¶ 33. Soon thereafter, the same job vacancy was re-announced,[5] but this time the vacancy made no mention of a bilingual requirement. Def.'s Facts ¶ 41; Def.'s Mot. for Summ. J. Ex. 2, Ex. 7 at 5. Once this vacancy announcement closed, Anderson compiled the applications and rated the applicants.[6] Def.'s Facts ¶ 43; Def.'s Mot. for Summ. J. Ex. 2, Ex. 7 at 5. Plaintiff's application was not in this vacancy file, and as a consequence, Anderson did not rate her application for this vacancy announcement. Def.'s Facts ¶ 44; Def.'s Mot. for Summ. J. Ex. 7 at 5.

Although Anderson did not locate Plaintiff's application in the file for this second vacancy announcement, the file did contain a number of other candidates' applications. Def.'s Facts ¶ 45. Namely, Anderson processed two eligible applicants rated at the GS–7 level, three at the GS–9 level, three at the GS–11 level, and four at the GS–12

level. Def.'s Facts ¶ 45; Def.'s Mot. for Summ. J. Ex. 7 at 5; see Pl.'s Resp. to Facts ¶ 45. Additionally, Anderson rated the four candidates who qualified at the GS–12 level, the highest presented, so that she could establish the three most qualified candidates in that grade. Def.'s Facts ¶ 46; Def.'s Mot. for Summ. J. Ex. 7 at 5. Because there were three or less candidates within each of the GS–7, GS–9, and GS–11 grades, Anderson did not have to rate the applications within these grades to determine the best qualified applicants. Def.'s Facts ¶ 47; Def.'s Mot. for Summ. J. Ex. 7 at 5; see Pl.'s Resp. to Facts ¶ 47. Having rated the most qualified applicants within the GS–12 grade, Anderson forwarded the list of all eligible candidates[7] at all four grades to the Dallas OASAM Office to be forwarded on to the OSHA Regional Office in Lubbock for consideration. Def.'s Facts ¶ 48; Def.'s Mot. for Summ. J. Ex. 7 at 5; see Pl.'s Resp. to Facts ¶ 48.

After having submitted the list of eligible candidates to the Dallas OASAM, but before the closing date for the second vacancy announcement, Anderson was reviewing a separate file for a different vacancy announcement. Def.'s Facts ¶ 50; Def.'s Mot. for Summ. J. Ex. 7 at 6; see Pl.'s Resp. to Facts ¶ 50. In that file, Anderson claims that she found Plaintiff's application for the second job vacancy announcement. Def.'s Facts ¶ 50; Def.'s Mot. for Summ. J. Ex. 7 at 6. According to Anderson, Plaintiff's application had been inadvertently misplaced in the file for this

---

**5.** Defendant refers to this second announcement as OSH–03–075. Def.'s Mot. for Summ. J. Ex. 2.

**6.** Anderson states that the file containing these applications, both for the first OSH–03–053 application and the second OSH–03–075 application, was located near Mr. Charles

Bridges's desk. Def.'s Mot. for Summ. J. Ex. 7 at 4–5.

**7.** Because they did not require rating, all the applications at the GS–7, GS–9, and GS–11 grades were submitted, along with the three most qualified applications at the GS–12 grade.

other vacancy announcement. Def.'s Facts ¶ 51; Def.'s Mot. for Summ. J. Ex. 7 at 6; see Pl.'s Resp. to Facts ¶ 51. Upon discovering Plaintiff's application, Anderson states that she immediately rated Plaintiff's application, and again, Plaintiff qualified at the GS-7 level. Def.'s Facts ¶ 52; Def.'s Mot. for Summ. J. Ex. 7 at 6. Because the second vacancy announcement had not yet closed, Anderson created an amended list of eligible candidates that included Plaintiff and forwarded it to the Dallas OASAM Office. Def.'s Facts ¶ 53; Def.'s Mot. for Summ. J. Ex. 7 at 6, Ex. 14, Ex. 15.

At the time that these two vacancy announcements were posted, Richard F. Tapio ("Tapio"), a member of the Oglala Lakota Tribe, served as the Director of the OSHA Regional Office in Lubbock. Def.'s Facts ¶ 74; Def.'s Mot. for Summ. J. Ex. 16 at 2; see Pl.'s Resp. to Facts ¶ 74. The OSHA District Office in El Paso lies within the larger OSHA Lubbock Region, and as a consequence, Mr. Tapio would have been the selecting official for the first vacancy announcement[8] if a selection had been made. Def.'s Facts ¶¶ 74–75; Def.'s Mot. for Summ. J. Ex. 16 at 2; see Pl.'s Resp. to Facts ¶¶ 74–75. No interviews were conducted from this announcement, however, because according to Tapio, OSHA was searching for a "larger pool of more technical applicants." Def.'s Mot. for Summ. J. Ex. 16 at 2. Later, when the applications from the second vacancy announcement were compiled and submitted to the OSHA Regional Office in Lubbock,[9] Tapio, as the selecting official, chose to delegate the authority to conduct interviews to his Assistant Area Directors. Def.'s Facts ¶ 78;

Def.'s Mot. for Summ. J. Ex. 16 at 2; see Pl.'s Resp. to Facts ¶ 78. Of the applications received, Tapio claims that the Assistant Area Directors decided to only interview candidates who were eligible for this position at the GS-12 grade. Def.'s Facts ¶ 79; Def.'s Mot. for Summ. J. Ex. 16 at 2. From that slate of GS-12 eligible candidates, the Assistant Area Directors selected Ricardo M.,[10] a Hispanic male, for the position. Def.'s Facts ¶ 80; Def.'s Mot. for Summ. J. Ex. 16 at 2.

### C. Procedural History

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 2, 2003. Def.'s Facts ¶ 1; Def.'s Mot. for Summ. J. Ex. 1; see Pl.'s Resp. to Facts ¶ 1. In that complaint, Plaintiff alleged that OSHA engaged in both race and gender discrimination when they did not select her for the position of Industrial Hygienist. Def.'s Mot. for Summ. J. Ex. 1. As a Hispanic female, Plaintiff lodged her complaint with the EEOC to see "justice done" and to seek "restitution." Id.

After receiving Plaintiff's EEOC Complaint, OSHA began an investigation that lasted nearly three years. Pl.'s Compl. ¶ 15; Pl.'s Resp. to Def.'s Mot. for Summ. J. 3. On June 6, 2006, OSHA handed down its final decision. Pl.'s Compl. ¶ 16.

### 1. Plaintiff's Complaint

On August 31, 2006, Plaintiff filed her Complaint with this Court. Doc. No. 1. By doing so, Plaintiff entered her Complaint within the ninety (90) day period allowed for the filing of a Title VII action following

8. OSH-03-053.

9. OSH-03-075.

10. Plaintiff's Response to the Motion for Summary Judgment was entered under seal to protect identities of parties not directly involved in the instant litigation. Accordingly, the Court has abbreviated the names of these individuals.

a final agency decision.[11] Within this original Title VII Complaint, Plaintiff claims that Defendant, as Cabinet Secretary over OSHA, "discriminated against Plaintiff based on her national origin, sex, or both her national origin and sex." Pl.'s Compl. ¶ 12. Subsequently, in her First Amended Original Complaint ("Amended Complaint"),[12] Plaintiff narrowed her claims to allege that Defendant had exclusively discriminated against her "based on her sex." Pl.'s Am. Compl. ¶ 12.

Plaintiff roots her allegation of discrimination in the idiosyncracies surrounding the selection process that OSHA employed to fill the position of Industrial Hygienist. Fundamentally, Plaintiff claims that OSHA considered "various applicants [for the position of Industrial Hygienist], but not Plaintiff, even though she was as fully qualified as the applicants who were considered." *Id.* ¶ 9. Additionally, Plaintiff states that only after selecting a man for the position in July of 2003 and confirming "that selection in writing did [ ] Anderson 'discover' Plaintiff's application and forward it the Regional Office for 'consideration.'" *Id.* ¶¶ 9–10. As a consequence of these procedural irregularities, Plaintiff contests Defendant's assertion "that the man selected was so overwhelmingly better qualified than Plaintiff that its refusal to consider her application was harmless." *Id.* ¶ 10.

### 2. Defendant's Answer and Motion for Summary Judgment

On November 11, 2006, Defendant entered its Answer to Plaintiff's Complaint.

Doc. No. 10. Following a failed attempt at mediation, Defendant also entered the Motion for Summary Judgment that has prompted the Court's current consideration. Within the Motion, Defendant avers the following: (1) that OSHA did not discriminate against Plaintiff by choosing not to select her for the position of Industrial Hygienist, and (2) that Defendant had a legitimate, non-discriminatory reason for not selecting Plaintiff. Def.'s Mot. for Summ. J. 3–9.

The Court will now address each of these contentions in turn.

## II. DISCUSSION

### A. Standard

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c) (2007); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202,(1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir.1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

**11.** The Code of Federal Regulations provides, in pertinent part:

A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:

(a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed.

29 C.F.R. § 1614.407 (2008).

**12.** Doc. No. 45.

*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ellison,* 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir.1996). If the moving party meets its initial burden, the nonmoving party "must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e). The non-movant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield,* 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir.2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. Title VII and Failure to Hire

 Fundamentally, Title VII proscribes discrimination in the hiring or termination of an individual based on his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1) (2006). In those cases where a plaintiff can produce no direct evidence of discrimination, the Court analyzes discrimination claims under Title VII using the burden-shifting frame-work set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green. See McDonnell Douglas v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995). To establish her prima facie case for gender discrimination within the *McDonnell Douglas* construct, Plaintiff must adduce evidence that (1) she is a member of a protected class; (2) she was qualified for the position for which she applied and for which the employer was seeking applicants; (3) that she was not hired despite her qualifications; and (4) someone outside the protected class was hired instead. *Thomas v. Trico Prods. Corp.,* No. 07–40114, 2007 WL 3151800, at *6 (5th Cir. Oct.26, 2007); *see Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 513 (5th Cir.2001); *Urbano v. Cont'l Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir.1998). If a prima facie case for discrimination can be established, then the burden shifts to the defendant to rebut the plaintiff's case by articulating a legitimate, nondiscriminatory reason for his rejection. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the defendant presents such a reason, then the burden shifts back to the plaintiff to show that the defendant's reasons for refusing to hire her are not true, but are mere pretexts for discrimination, or that the reasons are true, but that the trait that confers upon the plaintiff her protected status was a motivating factor. *See id.* at 804–05, 93 S.Ct. 1817.

### 1. Plaintiff's prima facie case of discrimination

 In the instant case, the Court finds that Plaintiff has succeeded in establishing a prima facie case for discrimination based on gender. Clearly, Plaintiff belongs to a protected class because of her gender. *See* 42 U.S.C. § 2000e–2(a)(1). Moreover, she applied for an advertised job for which

she was apparently qualified. Def.'s Facts ¶ 34; Def.'s Mot. for Summ. J. Ex. 7 at 4; see Pl.'s Resp. to Facts ¶ 34. Defendant did not hire her, but instead hired someone outside of Plaintiff's protected class. Def.'s Facts ¶ 80; Def.'s Mot. for Summ. J. Ex. 16 at 2. As a consequence, Plaintiff satisfies all four elements necessary to carry her prima facie case.

### 2. Defendant's rebuttal of the prima facie case

█ Because Plaintiff has established a prima facie case of gender discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for rejecting Plaintiff for the position. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. Defendant has proffered summary judgment evidence substantiating the assertion that Plaintiff's application was not considered by the selecting officials because her name was not on the list of qualified eligibles. Def.'s Mot. for Summ. J. 5, Ex. 7 at 6. Additionally, Defendant avers that even if Plaintiff's application had been among those in the pool slated for consideration, the selecting officials chose only to consider those applications who rated eligible at the GS–12 level. Def.'s Mot. for Summ. J. 5, Ex. 16 at 2. Under Fifth Circuit precedent, an employer's decision to hire a better qualified individual is a legitimate reason for another applicant's denial. See Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002) (stating that selecting a more qualified applicant for a position is a legitimate, nondiscriminatory reason for non-selection of an employee claiming discrimination). Accordingly, Defendant has met her burden of expressing a legitimate, nondiscriminatory reason for Plaintiff's non-selection. As a consequence, the inference of discrimination created by Plaintiff's prima facie case "drops out" and the burden shifts to her to prove that Defendant's supposed legitimate reason was actually a pretext for discrimination. See id.

### 3. Plaintiff's burden to prove pretext

█ Having found both a prima facie case for discrimination and a legitimate, nondiscriminatory reason for Plaintiff's non-selection, the Court's inquiry focuses exclusively on determining whether Plaintiff has shown that a genuine issue of material fact exists that the stated reason is pretextual. Maurer v. Am. Airlines, 249 Fed.Appx. 341, 343 (5th Cir.2007). Plaintiff must evidence this pretext by one of two different methods: (1) by actually demonstrating that she was "clearly better qualified than the person selected for the position," or (2) by submitting evidence that Defendant's "proffered explanation is false or unworthy of credence." Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 (5th Cir.2007).

### a. Plaintiff was not clearly better qualified than the individual selected for the position

█ Plaintiff fails to evince to this Court how her qualifications clearly surpassed those of the individual actually selected by Defendant to fill the position of Industrial Hygienist. Under Fifth Circuit precedent, "[s]howing that two candidates are similarly qualified does not establish pretext under this standard." Price, 283 F.3d at 723 (citing Odom v. Frank, 3 F.3d 839, 846 (5th Cir.1993)). Rather, Fifth Circuit decisions have assumed the emphatic position that to demonstrate pretext by "showing the losing candidate has superior qualifications, the losing candidate's qualifications must 'leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job.'" Id. (quoting Odom, 3 F.3d at 847).

In a per curiam opinion, the Supreme Court called the wisdom of this type of approach into question by holding that "[t]he visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006). The Court stopped short, however, of overruling this type of standard. Because the Supreme Court has questioned the value of these visual approaches, this Court finds additional guidance from related Fifth Circuit decisions, which have found that "the employer's judgment as to qualifications will not be probative of the issue of a discriminatory motive unless the qualifications are so widely disparate that no reasonable employer would have made the same decision." *Deines v. Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 282 (5th Cir.1999). In *Deines,* the Fifth Circuit also stated that "[i]t is hardly a basis for the jury to find mendacity on the part of the employer when its judgments on qualifications are somewhere within the realm of reason." *Id.* The relevant inquiry, according to the Fifth Circuit, must focus on "finding proof of mendacity" rather than simply "second-guessing" an employer's decision. *Id.*

Applying the extant case law to the instant case, the Court cannot conclude that Defendant's assessment of Plaintiff's qualifications sprang from a discriminatory motive. In place of an argument extolling her qualitative superiority to the ultimate selectee, Ricardo M., Plaintiff instead highlights that Ricardo M. "lacked at least one prerequisite of the GS–12 rating, a year as an industrial hygienist at the GS–11 level." Pl.'s Resp. to Def.'s Mot. for Summ. J. 2. Plaintiff also argues that "[i]t is questionable whether the ratings and ranking mean anything, since they rest of [sic][ ] Anderson's limited skills in evaluating applicants' self-serving and unverified descriptions of their prior experience." *Id.* Unfortunately for Plaintiff, neither of these arguments redound to evidencing how *she* was more qualified for the position of Industrial Hygienist than Ricardo M.

Based upon the applications that Plaintiff and Ricardo M. submitted for the position of Industrial Hygienist, the Court finds no mendacity in Defendant's ranking of Ricardo M. above Plaintiff. Def.'s Mot. for Summ. J. Ex. 3, 4. Without an exhaustive and unnecessary juxtaposition of the two candidates' qualifications, Ricardo M.'s application manifestly demonstrates greater experience and education relevant to the position of Industrial Hygienist.[13] *Id.* Accordingly, the Court cannot find that "the qualifications are so widely disparate

---

13. Examples of this manifest asymmetry include the following: (1) Plaintiff possessed only an undergraduate degree, while Ricardo M. held both an undergraduate degree and eighteen (18) hours toward his graduate degree; (2) Plaintiff's work experience as a Health Education Specialist from 2000–2003 did not qualify as experience in the field of Industrial Hygienist, while Ricardo M. was employed as an Industrial Hygienist at the time that he applied, along with over seven years of experience performing duties related to the position of Industrial Hygienist, including planning, initiating, and conducting chemical experiments in chemical process development, determining appropriate personal protective equipment ("PPE"), engineering controls and procedures for eliminating health hazards, performing inspections and maintenance of PPE and engineering controls, using sophisticated equipment for sampling and analyzing progress to chemical reactions, and drafting standard operating procedures for chemical processes. Def.'s Mot. for Summ. J. Ex. 7 at 7–8.

that no reasonable employer would have made the same decision." *See Deines,* 164 F.3d at 282. Indeed, the opposite conclusion seems more appropriate. As a result, Plaintiff cannot establish pretext by claiming that she was clearly more qualified than the individual that Defendant ultimately selected for the position of Industrial Hygienist.

### b. Defendant's reason for Plaintiff's non-selection was not false or unworthy of credence

The Court also finds that Plaintiff has failed to demonstrate that Defendant's proffered reason for Plaintiff's non-selection was either false or unworthy of credence. As defined by Fifth Circuit precedent, an employer's "explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir.2003). Within this construct, "[t]he pretext inquiry focuses on the authenticity of the employer's proffered reason." *Nasti v. CIBA Specialty Chems. Corp.,* 492 F.3d 589, 594 (5th Cir.2007). Further, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.* (quoting *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992)). Although Plaintiff may believe that her non-selection was motivated by discriminatory animus, she has failed to present evidence to raise a question of fact on this issue.

### i. Anderson's rating of Plaintiff and misplacement of her file do not represent false or unworthy reasons

Plaintiff attempts to discredit Defendant's reason for her non-selection on two separate grounds. First, Plaintiff inti-

mates that Anderson's rating of her at the GS–7 level and the later misplacement of her application betrayed a discriminatory intent. To support this argument, Plaintiff highlights that Anderson gave Ricardo M., the ultimate selectee, the highest ratings of any applicant despite a competing application from Mark B., an applicant with twelve and a half (12½) years of experience as an industrial hygienist. Pl.'s Resp. to Def.'s Mot. for Summ. J. 2. The perceived inconsistencies in Anderson's approach drive Plaintiff to refer to Anderson's acumen for rating as "limited." *Id.* Furthermore, Plaintiff states with suspicion that "[o]nly after [Defendant] had made its selection and confirmed that selection in writing did [ ] Anderson 'discover' Plaintiff's application and forward it to the Regional Office for 'consideration.'" Pl.'s Compl. ¶ 10.

While Plaintiff's averments do cast aspersion on Anderson's capabilities, they fail to convey how Anderson's reasons for rating Plaintiff at the GS–7 level or for misplacing her application are either false or unworthy of credence. To the contrary, Plaintiff's own evidence demonstrates that Anderson rated a female applicant at the GS–12 level. Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 5 at 2. The Court strains to comprehend how Plaintiff can argue that Anderson discriminated against her based on her gender but not against the female rated as a GS–12, when both of these female applicants were known to Anderson only by their applications.

Likewise, Plaintiff's insinuation that a discriminatory intent prompted Defendant to misplace her file also fails. Although Defendant cannot state with certainty which employee misplaced the file, Defendant maintains that a Human Resources Assistant most likely did so. Def.'s App. to Mot. for Summ. J. 5. The OSHA Human Resources Assistant that would have re-

ceived Plaintiff's application during the relevant time period, Mr. Charles Bridges, stated in his sworn affidavit that he would stamp each application as they were received and then place the application in the file folder designated for that vacancy announcement. Def.'s Mot. for Summ. J. Ex. 8 at 1. Plaintiff has offered no evidence to refute this account. Moreover, when Anderson did discover this misplacement-most likely perpetrated by Mr. Bridges-she acted upon the matter immediately and forwarded Plaintiff's name for consideration. *Id.* at Ex. 7 at 5–6. Even if Plaintiff could provide evidence of a conspiratorial scheme to discriminate between Anderson and Mr. Bridges, such evidence would still not address why Anderson processed and forwarded Plaintiff's application upon discovery. Plaintiff simply fails to proffer evidence sufficient to raise an issue of material dispute in this regard. Thus, the Court finds that rating Plaintiff as a GS–7 and misplacing her file do not constitute false reasons or reasons unworthy of credence, and, as such, the Court cannot construe pretext from their occurrence.

### ii. Defendant's exclusive consideration of GS–12 applications does not constitute a false or unworthy reason for Plaintiff's non-selection

Next, Plaintiff seeks to portray Defendant's decision to only consider GS–12 rated applicants as being a facade for discriminatory intent. To do so, Plaintiff formulates three different foundations for suspicion, including (1) a refutation of the fiscal prudence behind the decision to only consider applicants rated at the GS–12 level; (2) an attack against the decision to only consider these individuals having been made in secret; and (3) an argument that Defendant did not properly maintain records surrounding this decision. Pl.'s Resp. to Def.'s Mot. for Summ. J. 3–10. Although each of these lines of reasoning attempts to distill issues of material fact in a distinct and separate way, the only constant between the three asseverations is their shared inability to do so.

First, the Court can find no support for the position that choosing a better qualified candidate at a higher salary range betrayed Defendant's discriminatory intent. Plaintiff correctly posits that the GS–12 pay grade does indeed pay more than the GS–7 grade. *Id.* at Ex. 4. That fact alone, however, reveals nothing about the possible pretext that could have motivated the choice to consider only GS–12 candidates. More importantly, the deposition testimony of Mr. Jack Turner ("Turner"), one of the Assistant Area Directors responsible for the decision to consider only those rated at the GS–12 level, indicates that the OSHA office in El Paso needed a Senior Industrial Hygienist. Turner Dep. 43:20–25, Nov. 30, 2007. In fact, according to Turner, "every office needs a senior industrial hygienist,"[14] and at the time of the announcement, he doesn't believe that the hygienist assigned to El Paso fulfilled that need. *Id.* at 44:19–22. Thus, having established that OSHA required a more senior applicant to fill the position, Defendant's decision to expend additional resources to hire a senior-level, GS–12 rated applicant does not strike the Court as an unreasonable expenditure. Correspondingly, the Court has no reason to find pretext underlying Defendant's decision to hire a more experienced individual for the position, regardless of the additional expense that this choice required.

14. Turner Dep. 43:20–21.

Next, the Court rejects Plaintiff's attempt to demonstrate pretext by alleging that the decision to consider only GS–12 rated applicants was made without a sufficient quantum of transparency. According to Plaintiff, "[t]he supposed change in the qualification requirement was made completely out of the public eye, with no communication about it to persons affected." Pl.'s Resp. to Def.'s Mot. for Summ. J. 9. Plaintiff follows by postulating that the "legal effect" of this supposed change in the qualification requirement on the establishment of a prima facie case could pose "an issue of first impression" for the Fifth Circuit. *Id.* As substantiation for this notion, Plaintiff cites the Fifth Circuit decision of *Medina v. Ramsey Steel Co., Inc.,* wherein the Court addressed the differences between objective and subjective hiring criteria in the context of workplace discrimination. *Medina v. Ramsey Steel Co.,* 238 F.3d 674 (5th Cir.2001). Based upon this precedent, however, the Court finds no support for finding pretext underlying Defendant's choice to consider only GS–12 applicants.

In *Medina,* the Fifth Circuit heard an appeal from a district court's grant of summary judgment. *Id.* at 679. The plaintiff in the case, Arturo Medina ("Medina"), alleged that his employer, Ramsey Steel Co., Inc. ("Ramsey Steel"), refused to promote him because of his age and terminated him in retaliation for complaining of age discrimination. *Id.* at 678. The Fifth Circuit summarized the central issue of the case thus:

> The focus of Ramsey Steel's attack on Medina's prima facie case, and the basis for the district court's grant of summary judgment, is that Medina is unqualified for the outside sales position because he failed to meet the "substantial sales experience" requirement. This was the only qualification Ramsey gave for the position; so, the crucial, central issue is

whether an employer can defeat an employee's claim via summary judgment at the prima facie case stage by claiming that he failed to meet entirely subjective hiring criteria. We do not think so.

*Id.* at 681.

The Fifth Circuit went on to explain that "[i]f a failure to satisfy subjective hiring criteria could defeat an employee's prima facie case, 'the court then would not be required to consider evidence of pretext.'" *Id.* (citing *Burrus v. United Tel. Co. of Kan., Inc.,* 683 F.2d 339, 342 (10th Cir. 1982)). Furthermore, the Fifth Circuit reasoned that this would allow "the use of [ ] subjective hiring criteria" to "go unchallenged," thereby collapsing the pretext analysis "into a single initial step at which all issues would be resolved." *Id.* (citing *Burrus,* 683 F.2d at 342). For these reasons, the Fifth Circuit held that it was "inappropriate to decide as a matter of law that an employee is unqualified because he has failed to meet entirely subjective hiring criteria." *Id.* (citing *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 (5th Cir.1993)). Instead, the Fifth Circuit held that "an employee must demonstrate that he meets objective hiring criteria at the prima facie case stage, and the issue of whether he meets subjective hiring criteria is dealt with at the later stages of the analysis." *Id.* (citing *Lindsey,* 987 F.2d at 327; *Burrus,* 683 F.2d at 342).

This decision guides the Court's Order in several respects. First, the Court has refused to allow the later decision to consider only GS–12 employees to quash Plaintiff's prima facie case of discrimination. To the contrary, the Court has adjudged Plaintiff to be qualified for the purposes of her prima facie case based on the objective criteria delineated in OSHA's job vacancy announcements, which call for applicants from the GS–7 to GS–12 pay

grades. Pl.'s Resp. To Def.'s Mot. for Summ. J. Ex. 1–4. Moreover, in keeping with the decision in *Medina*, the Court has confined its analysis of Defendant's subjective decision to only consider more experienced applicants to the later, pretext inquiry stage of the discrimination analysis. *See Medina*, 238 F.3d at 681.

Having done so, however, the Court still finds no evidence to suggest that a discriminatory animus motivated Defendant's decision to interview the more experienced applicants. Indeed, Defendant has offered evidence corroborating her account that OSHA required a senior-level individual to fill the position of Industrial Hygienist.[15] In addition, when Turner, one of the officials responsible for Plaintiff's non-selection in this case, was asked why, if Defendant sought to hire a more experienced GS–12, that Defendant would open applications up to applicants rated GS–7 through GS–12, rather than just soliciting applications from GS–12 rated applicants, he responded as follows:

> Well, I'll tell you why. Because it was so hard to get anybody to apply for the jobs in El Paso that were qualified. That's part of it. Not only do you broaden it because—let's say you run an announcement for just a GS–12 and you get nobody apply, then you're stuck and you've got to go through the whole process again. If you broaden it out and you announce 7 to 12, lo and behold you don't have any 12s, you may be then forced to go down to an 11. And if you don't have any 11s, you may be forced to go down to a 7. But if you broaden it out and you run it and lo and behold you get three qualified 12s, that's where you're going to select.

Turner Dep. 46:6–18.

Taking this into account, Defendant's decision to solicit applications from the broader range of GS–7 through GS–12 applicants, while only interviewing the more experienced GS–12 candidates, strikes the Court as eminently reasonable. Furthermore, Plaintiff has offered no competent summary judgment evidence to create an issue of material dispute regarding this fact. Consequently, the Court cannot find that Defendant's decision to interview only GS–12 rated candidates, based on OSHA's need for a senior-level applicant to fill the position, represents a false reason or a rationale unworthy of credence.

The final component of Plaintiff's argument for pretext alleges that Defendant engaged in spoliation of records relevant to Plaintiff's discrimination claim. In Plaintiff's own words, "[a] reasonable trier of fact might find especially troubling the complete absence of documentary evidence about such an important matter as the supposed change in job qualifications which doomed Ms. Longo to failure." Pl.'s Resp. To Def.'s Mot. for Summ. J. 3. Likewise, Plaintiff avers that "OSHA's three decision makers claim they made an important decision—one that excluded their

---

**15.** In his deposition testimony, Turner stated the following:

Q: What was the need for an industrial hygienist in El Paso that caused the hiring process to be initiated?

A: Like I said, every office needs a senior industrial hygienist. They need a safety—a senior safety person because you have safety hazards, you have health hazards, so you need to address those.

Turner Dep. 43:20–23.

Later, Turner also testified as follows:

Q: But why did you need another industrial hygienist in El Paso besides Jessica Martinez?

A: Well, I don't believe Jessica Martinez was a senior compliance officer when we announced this, because they were going to bulk up to two safety and two [Industrial Hygienists].

*Id.* at 44:19–22.

only female applicant at the time after they had already passed over two female applicants who met the higher qualification." *Id.* at 10. Additionally, Plaintiff argues that "[a]ll three men claim that they made this important decision with absolutely no documentation whatsoever." *Id.* As a consequence, Plaintiff contends that "there is some evidence of spoliation, the sufficiency of which presents a jury question." *Id.*

Defendant counters Plaintiff's allegations of spoliation. Moreover, Defendant contests the implication that Plaintiff attempts to create with her claim "that the three decision makers who made the decision to consider only applicants who qualified at the GS–12 level, did so without maintaining any documentation." Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Def.'s Reply") 6. Defendant contests the veracity of this statement by explaining that documentation of the hiring decision does exist, and that "[n]otes of the interviews of the three applicants who qualified at the GS–12 were made and copies were provided to the EEOC Investigator and to Plaintiff." *Id.* at 6 n. 2. Additionally, Defendant challenges Plaintiff's belief that "e-mails should exist documenting the decision to consider only GS–12 applicants." *Id.* (emphasis omitted). Defendant then focuses her challenge by positing that "[i]n yet another twist of logic, Plaintiff alleges spoliation because Defendant did not maintain computer backup tapes to prove a negative, that is, that there were no e-mails exchanged between these individuals regarding this decision." *Id.*

To support her position, Defendant proffers evidence that none of the individuals responsible for deciding to review only the GS–12 applicants communicated on the subject via e-mail. Specifically, Defendant details how Plaintiff deposed Tapio, Tur-

ner, and Scott Ketcham ("Ketcham"), the three individuals responsible for winnowing the field to GS–12 rated applicants, and that each replied that they did not communicate by e-mail on the subject. *Id.* Within Tapio's deposition, Tapio testified that any communication he had with his assistants on the subject was via telephone rather than in any written form, whether by e-mail or hard copy. Tapio Dep. 9:11–10:11, Oct. 22, 2007. Similarly, Turner testified that any communication he would have had with Tapio on the matter would have been either in person or over the telephone. Turner Dep. 32:10–25. As with the other two decision makers, Ketcham also testified that he did not engage in any written or e-mail communications regarding this decision. Ketcham Dep. 13:13–24, Dec. 12, 2007. By his account, he and Turner only discussed the matter in person. *Id.* at 13:24.

In sum, all three individuals responsible for the decision to consider only GS–12 candidates have supplied deposition testimony to corroborate the fact that no e-mails exist to document the choice to review only GS–12 applicants. Having supplied this Court with absolutely no competent summary judgment to the contrary, the Court can find no basis to find that the testimony of these individuals is either false or unworthy of credence. As a result, the Court finds no evidence of spoliation or discriminatory pretext underlying this lack of documentary evidence.

## III. CONCLUSION

For the reasons outlined above, Plaintiff has failed to supply sufficient evidence to survive summary judgment under the *McDonnell Douglas* framework. Accordingly, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 27) in all respects.

745

The Clerk shall close the case.

**SO ORDERED.**